UNITED STATES of America,
Plaintiff–Appellant,

v.

Winston ALLEN, Defendants–
Appellees.

No. 01–3375.

United States Court of Appeals,
Sixth Circuit.

Dec. 26, 2002.

Before MERRITT and GILMAN,
Circuit Judges;  and TARNOW,* District
Judge.

* The Honorable Arthur J. Tarnow.  United
States District Judge for the Eastern District
of Michigan, sitting by designation.

OPINION

ARTHUR J. TARNOW, District Judge.

On June 21, 2000, Defendant Winston Allen was indicted for conspiracy to distribute marijuana (Count I) and for attempted possession of marijuana with intent to distribute (Count III). Prior to trial, the district court established a plea-bargain cut-off date of Wednesday. August 23, 2000. Initially, defendant expressed his intent to accept the plea bargain, but he changed his mind, and the case was set for trial on Monday, August 28, 2000. The night before trial, after the deadline passed, he informed his lawyer that he wanted to accept the plea bargain. On the day of trial, his attorney asked the district court judge to extend the cut-off date, but she declined to do so. Defendant's remaining options were to either go to trial or change his plea to guilty to all the charges in the indictment without a plea bargain. He chose the latter. Under the plea bargain, the government's sentence range recommendation would have been between 51 and 63 months. Without the plea bargain, the sentence range was 70 to 87 months. Defendant was ultimately sentenced to 70 months imprisonment.

On appeal, defendant asserts trial counsel was ineffective for failing to advise him of the cut-off date. He asserts that had he been made aware of the plea bargain cut-off date, he would have accepted the plea prior to the cut-off date, thereby gaining a reduction in his sentence. If defendant did receive ineffective assistance, he may be entitled to as much as a 19–month reduction in his sentence. Since the record regarding whether defendant received ineffective assistance of counsel is not sufficient, we **REMAND** the case to the district court for an evidentiary hearing on that issue.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 21, 2000, Defendant Winston Allen was indicted, with three co-defendants, for conspiracy to distribute marijuana (Count 1) in violation of 21 U.S.C. § 846. He was also indicted, with one co-defendant, for attempted possession of marijuana with intent to distribute (Count III) in violation of 21 U.S.C. § 841(a)(1).

In two orders, dated June 28 and July 25, 2000, the district court established that plea agreements would not be accepted within forty-eight hours of trial. The orders explicitly stated that "[t]hereafter, defendant will be obliged to go to trial or plead guilty to all offenses charged in the indictment." The orders also stated that in the event of a Monday trial, plea agreements would be accepted until 5:00 p.m. the Wednesday before. The July 25 order established a trial date of Monday. August 28, 2000, so the plea cut-off date was Wednesday, August 23, 2000.

On August 21, 2000, the prosecutor faxed a proposed plea agreement to defense counsel. The plea agreement called for a guilty plea to one of the two counts, the conspiracy count, and dismissal of the other count. It also called for a base offense level of 28, with a recommendation for a downward departure of five points. The recommendation was based on acceptance of responsibility and for being a minor participant in the alleged crimes.

On August 22, 2000, attorney Lewis visited defendant at the jail to discuss the plea offer. Defendant contended the meeting only lasted twenty to thirty minutes. At the end of the meeting, defendant signed the plea agreement. Mr. Lewis informed the court, and a change of plea hearing was set for Friday, August 25, 2000.

At some point prior to Friday, defendant left a message for his attorney that he needed to talk to him and that he changed his mind about the plea. He had some questions or concerns about the plea that he wanted to discuss with his attorney. Mr. Lewis informed the court on August 24, 2000, that his client no longer wished to change his plea, but he did not contact his client.

On Sunday, August 27, 2000, the day before trial, Mr. Lewis met with defendant at the jail. They talked again about the plea agreement, and defendant's concerns with the plea agreement were satisfied. He expressed that he again wanted to accept the plea, and Mr. Lewis faxed a letter to the prosecutor to that effect. Defendant asserts that Mr. Lewis told him that the United States District Attorney said the plea agreement was still available and that he would enter the plea on the day of trial.

However, on the day of trial, August 28, 2000, when Mr. Lewis informed the court that his client wished to enter a plea under the plea agreement, both the judge and the prosecutor indicated that the offer was no longer available. Mr. Lewis sought an exception to the 48–hour rule, but the judge declined to grant an exception and informed him that his remaining options were to either to go to trial or change his plea to guilty on all the charges without the benefit of a plea bargain. After consultation with counsel, defendant chose the latter.

On August 30, 2000, the defendant wrote a letter to the court pleading for a lenient sentence. He explained that he was first told about the plea offer on August 22, 2000, and he was only given twenty to thirty minutes to think about it and sign it. He asked his attorney if he could have a day to think about it, but Mr. Lewis refused. He asserted that he did not know that there was an outside time limit on the plea. He also stated that he could not reach his attorney on Thursday, Friday, or Saturday. His attorney was supposed to visit him on Thursday evening, but he never arrived. When he finally talked to his attorney on Sunday, the attorney alleviated his concerns and told him the plea offer was still available, so defendant agreed to accept the plea offer. He said that he first discovered that he was only supposed to have 48–hours to consider the plea when he appeared in court on August 28.

In a second letter to the court, received October 30, 2000, defendant described his continuing dissatisfaction with the quality of his lawyer, Mr. Lewis. He asserted that he saw his attorney a total of five or six times, fifteen to thirty minutes each time. Defendant stated that every time he tried to talk about the discrepancies in the proof against him, Mr. Lewis would tell him it could wait until next time. On the Sunday before trial, he realized that his attorney was not ready for a trial, so he begged Mr. Lewis to ask for a continuance; Mr. Lewis informed him the judge would not allow it. Mr. Allen said that he decided to plead guilty due to his attorney's unpreparedness and the professed unavailability of a continuance. He further explained that he accepted the plea reluctantly, on the advice of his lawyer, whom he trusted because he was "one who studied law." However, now he sees that his attorney was only trying to push him into a plea, so he would not have to try the case.

In the letter, Mr. Allen also explained that he had only seen his attorney once since the guilty plea, and then, only because Mr. Lewis was upset about the first letter Mr. Allen sent to the judge. He said, "I have questions to ask, things I need to know about my case. Mr. Lewis

put a block on his phone and cut all contact with me and my case. We have no communication whatsoever."

Finally, he contended in the letter that he initially refused to talk to the presentence investigator, Mr. Grawe, without his attorney present. Mr. Grawe returned with Mr. Lewis, who told defendant he could not stay but told defendant he should just talk to Mr. Grawe in his absence since Mr. Grawe was Mr. Lewis' friend. Defendant then detailed several errors or fabrications in Mr. Grawe's pre-sentence report and asserted that Mr. Lewis never bothered to stay long enough to discuss those errors. He concluded the letter by asking the judge for a new attorney.

The district court held a hearing on November 14, 2000, to discuss defendant's letter. In the meantime. Mr. Lewis filed a motion to withdraw. At the hearing, the Court granted Mr. Lewis' motion to withdraw and appointed new counsel. Louis Rubenstein. On November 30, 2000, Mr. Rubenstein requested a status conference. The status conference was held on December 6, 2000, and the court heard some preliminary arguments regarding reinstatement of the original plea offer. At the conclusion of the hearing, the judge asked the parties to file written briefs on the withdrawal issue by January 8, 2001, and both parties did so.

On January 16, 2001, the district court denied defendant's motion to withdraw his guilty plea, asserting two reasons for the ruling. First, the court held it was powerless to force the government to reenter plea negotiations on an offer that had already expired. Second, the court stated that:

Defendant Allen is not seeking, and cannot under Rule 32(e) seek, relief with respect to the August 22 plea offer concerning which he contends he was not fully advised. Rather, he seeks relief from a plea entered on August 28 concerning which he was fully advised by the Court, if not by counsel.

The district court concluded that since defendant's August 28 plea was voluntary, knowing, and intelligent, it was presumptively valid, and defendant had not made a showing that the guilty plea should be set aside.

The Presentence Investigation Report ("PIR") found a base offense level of 28 and a criminal history category of II. The PIR recommended a two point adjustment downward for acceptance of responsibility, but found that neither the third acceptance of responsibility point, nor the adjustment for being a minor participant were warranted. The third acceptance of responsibility point was not recommended because defendant did not notify "authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so the government may avoid preparing for trial and the Court may schedule its calendar efficiently." As for rejecting the minor participant adjustment, the PIR states "each codefendant is equally culpable and no role adjustment applies." The PIR found a total offense level, then, was 26. The recommended corresponding guideline range was 70 to 87 months.

The defendant objected to both the denial of the third acceptance of responsibility point and the denial of an adjustment based on his minor role in the offense, but the district judge overruled his objections. On April 3, 2001, the district court, adopting the recommendation in the PIR, sentenced defendant to 70 months imprisonment on both counts to run concurrently, 4 years supervised release, a $2000 fine, and two $100 assessments. The 70 months imprisonment was at the lowest end of the applicable guideline range of 70 to 87 months.

## II. PARTIES' ARGUMENTS

Mr. Allen argues that his guilty plea should be set aside and that he be given the benefit of the original plea bargain due to counsel's ineffectiveness in failing to inform him of the plea cut-off deadline.

The government argues that there is no longer a plea offer on the table because defendant rejected the plea offer. The government further argues that defendant's August 28 plea was knowing, intelligent, and voluntary. It concludes that defendant's belated attempts to blame his woes on counsel should be rejected by this Court.

## III. STANDARD OF REVIEW

A claim of ineffective assistance of counsel is a mixed question of law and fact that this Court reviews *de novo*. *Rickman v. Bell*, 131 F.3d 1150, 1153 (6th Cir.1997).

## IV. ANALYSIS

### A.

In order to prevail on his one issue on appeal, ineffective assistance of counsel, Mr. Allen must satisfy two prongs: (1) counsel's performance undermined the proper functioning of the adversarial process and (2) but for those errors the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test applies to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Hill*, the Supreme Court held:

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)] and *McMann v. Richardson*, [397 U.S. 759,

771 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58–59.

Generally, this Court will not hear ineffective assistance claims on direct appeal, preferring that such claims be brought on *habeas* review after the record is further developed. *United States v. August*, 984 F.2d 705, 711 (6th Cir.1992). This rule recognizes that ineffective assistance claims are fact-specific, and "appellate courts are not equipped to resolve factual issues." *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir.1997). However, when the record below is adequately developed, enabling courts to assess the merits of defendant's claim, the court may consider the issue on direct appeal. *U.S. v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990). In this case, the trial court held a hearing and accepted briefs on the effectiveness of trial counsel's assistance. Also, defendant was subsequently represented by counsel other than the one accused of ineffectiveness. *See United States v. Williams*, 176 F.3d 301, 312 (6th Cir.1999) (considering an ineffective assistance claim on direct appeal where defendant had new counsel and both parties briefed the issue). Finally, both parties have addressed the issue in their appellate briefs. Therefore, the parties agree that, in light of the above, the record is sufficient for this Court to consider ineffective assistance on direct appeal.

Despite the record developed below, we disagree with the parties that the record is adequate for this Court to reach a decision

on the merits of defendant's claim. There is no testimony from either defendant or defendant's original counsel regarding whether defendant was told about the deadline. As discussed further below, whether defendant knew about the 48–hour is crucial to resolving his ineffective assistance of counsel claim.

### B.

The government contends that the record clearly demonstrates defendant was aware of the deadline. In support, the government cites Defense Counsel Lewis' statement at the change of plea hearing on August 28, where he stated:

> Understanding your rule, Your Honor, your order, it was given to my client on Thursday,[1] and at that particular time he was also asked to come to this honorable chamber that afternoon to enter the plea with a co-defendant.

However, counsel's statement does not necessarily demonstrate defendant's knowledge, but merely confirms what defendant would acknowledge—that Mr. Lewis was aware of the deadline. Immediately prior to this statement, Mr. Lewis explained to the court how he reviewed the plea agreement with his client. Thus, in context, the "it" could refer to the plea agreement, and "understanding your rule" could refer to Mr. Lewis' own knowledge. Without testimony from Mr. Lewis. Mr. Allen, or both, it is impossible to decide what counsel meant by this statement. It would be a mistake to conclude whether Mr. Allen was aware of the plea deadline on the basis on one ambiguous statement.

Additionally, the subsequent actions of both defense counsel and defendant, in accepting the lapsed plea on Sunday indicate that, at the very least, Mr. Lewis felt the 48–hour rule was not a firm deadline, and he so informed his client. The late acceptance of the plea agreement supports defendant's allegation that did not know he was agreeing to a plea that was no longer available.

### C.

The government argues that we could affirm the district court without taking testimony on whether the defendant was told about the deadline, because the district court offered two legal bases for its opinion that were independent of defendant's deadline knowledge. First, the district court stated that, even if it were to conclude that the August 28 plea should be withdrawn, there is no legal authority by which it could force the government to offer the former plea agreement. Second, the district court noted that Rule 32(e) states that a plea may be withdrawn for any "fair and just reason" prior to sentencing. Fed. R.Crim. Pro. R. 32(e). The court found:

> While Defendant brings his request pursuant to Rule 32(e), the request bears little relationship to the plea he actually entered on August 28. Rather it is re-

---

1. The government states that counsel erred in stating that it was Thursday, contending that he confused his days and really meant to say Wednesday. The government does not offer any support for its assertion. The dates and days mentioned by both parties are confused throughout the record. For example, defense counsel asserts one date of Friday, August 23, but Friday in 2000 was actually the 25th. At another point, he stated that he reviewed the plea agreement with his client on Thursday, August 22, but Thursday was the 24th. The government makes the same mistake when it asserts defendant really meant Wednesday the 22nd, but Wednesday was the 23rd. While the proper date or day of the week is not crucial to resolution of this case, if the day of the week does become a crucial element in deciding whether there was ineffective assistance of counsel, then it simply bolsters this Court's conclusion than an evidentiary hearing is necessary.

lated to events the previous week, when he first executed and then withdrew his acceptance of the government's plea offer.

Defendant Allen argues that Mr. Lewis failed to properly and accurately advise him concerning the implications of his plea, the withdrawal of the plea, and the consequences of failing to change his plea prior to the date of trial. Were Defendant asking for permission to withdraw a timely plea pursuant to the plea agreement he considered on August 22, those events would be relevant. Mr. Allen did not finally accept that plea offer, however, and the plea he actually entered on August 28 was made in very different circumstances.

Before he entered his guilty pleas on August 28, Defendant Allen was fully advised by the Court that he would not be able to enter a plea pursuant to the agreement offered by the United States on August 22. The Court advised Mr. Allen that a plea entered on the day of trial could only be a plea to both counts against him ... Whether or not Mr. Lewis had fully advised Defendant Allen concerning the plea he was considering, Defendant Allen cannot argue that he did not understand the effect of the plea he entered on August 28, 2000.

The district court concluded that since the August 28 plea was voluntary, knowing, and intelligent, it could not be set aside under Rule 32(e). In essence, the court concluded that even if it found ineffective assistance of counsel, there was no remedy; thus, the plea should not be set aside.

Initially, we note that if the district court is correct on the first point, then the second point necessarily follows. Defendant admits that he is not asserting his innocence or seeking to force the government to put on proofs. Therefore, if the court does not have the power to reinstate the plea agreement, then there is no remedy and no reason to withdraw the August 28 guilty plea because defendant does not want a trial.

The question for the Court, then, is whether the district court was correct in its first ruling that there is no remedy because the court did not have the power to force the government to revive a lapsed plea offer. A plea bargain is a contract between the prosecution and the defense and is interpreted using contract law principles. *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir.1990). Consequently, the Supreme Court has held that when the prosecutor withdraws a plea agreement, the defendant cannot specifically enforce it. *Mabry v. Johnson*, 467 U.S. 504, 511, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) ("[B]ecause [withdrawal of the plea offer] did not impair the voluntariness or intelligence of his guilty plea, respondent's inability to enforce the prosecutor's offer is without constitutional significance.").

■ However, the district court overlooked a line of cases stating that when a defendant has received ineffective assistance of counsel in violation of the Sixth Amendment, in order to remedy the constitutional deficiency, the court has the power to restore the defendant to the place he was in prior to the ineffective assistance. "Remedies for the deprivation of the Sixth Amendment right to the effective assistance of counsel 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Turner v. Tennessee*, 858 F.2d 1201 (6th Cir.1988), *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989), *reinstated*, 726 F.Supp. 1113 (M.D.Tenn.1989), *aff'd*, 940 F.2d 1000 (6th Cir.1991), *cert. denied*, 502 U.S. 1050, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992). In *Turner v. Tennessee*, a panel

of this court held that defendant received bad advice regarding a rejected guilty plea, rising to the level of ineffective assistance of counsel. *Id.* at 1207. Since Mr. Turner was not complaining about his counsel's performance at trial, the court found "a new trial cannot remedy the specific deprivation suffered." *Id.* The panel concluded that the appropriate remedy, in fact, "the only way to neutralize the constitutional deprivation suffered by Turner," was to allow defendant to consider the state's prior plea offer with the effective assistance of counsel. *Id.* at 1208. *See also Turner v. Texas,* 49 S.W.3d 461, 471 (Tex.App.2001) (holding where defense counsel offered ineffective assistance by not informing the defendant of the deadline, the proper remedy was reinstatement of the plea offer); *United States v. Blaylock,* 20 F.3d 1458, 1468 (9th Cir.1994) (where "the defendant was deprived of the opportunity to accept a plea offer, putting him in the position he was in prior to the Sixth Amendment violation ordinarily will involve reinstating the original offer."). The district court incorrectly overlooked this line of cases in finding that it did not have the power to reinstate the government's plea offer.[2]

The government cites *United States v. Delgado,* 61 F.3d 904 (6th Cir. July 15, 1995) (unpublished) in support of its argument that the lapsed plea offer is no longer available. In *Delgado,* the defendant sought to compel specific performance of a plea offer she rejected. *Id.* at *6. The government, pointing to Mr. Allen's initial rejection of the plea offer, states that *Delgado* is factually parallel to this case. However, the government overlooks that here, Mr. Allen is claiming that the ineffective assistance of counsel caused him to reject the plea offer; whereas, in *Delgado,* there was no allegation of ineffective assistance. While both cases involve a plea offer, that is as far as the similarity extends.

We conclude that if it were shown that defense counsel provided ineffective assistance, the remedy is to compel the government to reinstate the prior plea offer, restoring Mr. Allen to where he was before ineffective assistance was rendered.

### D.

In light of our conclusion that there is a remedy, we now turn to whether defendant has satisfied the two *Strickland* prongs, entitling him to the available remedy. Under the first prong of the *Strickland* analysis, the Court asks whether counsel's performance was deficient, or fell

---

**2.** The Ninth Circuit further notes that the government may "seek to demonstrate that intervening circumstances have changed the factual premises of its original offer that, with just cause, it would have modified or withdrawn its offer prior to its expiration date." *Blaylock,* 20 F.3d at 1468–69. Similarly, in *Turner v. Tennessee,* a panel of this court stated that requiring specific performance of the original plea might unnecessarily infringe on the competing interests of the state. 858 F.2d at 1208–09. Thus, the court held that a presumption of vindictiveness attached if the reinstated plea offer was higher than the original offer, but *that* the government could rebut the presumption with specific, non-vindictive reasons for the increase. *Id.* at 1209.

Seeking to invoke this line of cases, the government contends that the plea offer is no longer on the table. The benefit of the bargain for the government was that they would avoid trial. When defendant rejected the plea bargain, the government had to prepare for trial, and the benefit to the government is now gone.

However, Mr. Allen's claim is that but for counsel's error, he would have accepted the plea offer, which, in turn, would have eliminated the need for a trial. Consequently, if defense counsel provided ineffective assistance, then it was his constitutional error, and not the defendant's, that caused the trial. If Mr. Allen is correct, then it is not relevant that the government had to prepare for trial.

below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. As outlined above, the Sixth Circuit has held that failure to give competent advice on a guilty plea can satisfy the first prong. *Turner v. Tennessee,* 858 F.2d at 1207. In *Blaylock,* the Ninth Circuit found that failure of defense counsel to inform a client about plea offers falls below an objective standard of reasonableness. 20 F.3d at 1465–66 (collecting cases holding the same thing from the First, Third, Fifth, and Seventh Circuits).

In *Turner v. Texas,* 49 S.W.3d at 465, the question before the court was the same as the one before this panel, whether failure to communicate a deadline attached to a plea offer is objectively unreasonable under the first *Strickland* prong. First, the court noted that several federal circuit courts have found that failure to inform clients of plea offers is objectively unreasonable. *Id.* at 464–65. Second, the court noted that they had previously held that an attorney must fully advise the client about the terms and desirability of pleas. *Id.* at 465. Thus, the court concluded:

> Defense counsel's failure to promptly inform a client of the imminent expiration of a plea offer effectively deprives a client of a 'last chance' opportunity to avoid a potential sentence of much greater length than the term of the offer and is an omission that falls below an objective standard of reasonableness.

*Id.* Further, the ABA Standards for Criminal Justice counsel that:

(a) Defense counsel should keep the defendant advised of developments arising out of plea discussions conducted with the prosecuting attorney, and should promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney.

. . .

(c) Defense counsel ... should ensure that the decision whether to enter a plea of guilty or *nolo contendre* is ultimately made by the defendant.

ABA Standards for Criminal Justice, 14–3.2(a) & (c) (3rd ed.1997)

■ Here, if Mr. Allen were not told about the deadline, he was not given the "last chance" of which the *Turner v. Texas* court spoke. He was not advised of all of the relevant details he needed to make a decision about whether and when to accept the plea bargain as required by the ABA standards. While it is not possible on the present record to conclusively rule whether Mr. Allen was aware of the deadline, his actions are consistent with one who was unaware of the deadline. On Sunday, after the plea offer had lapsed, Mr. Allen manifested his clear intent to enter the plea agreement. Earlier in the week, he revoked his acceptance of the plea, not because he necessarily wanted to proceed to trial, but because he had some questions he wanted answered. On August 30, he sent a letter to the court, prior to sentencing, expressing his lack of knowledge of the deadline. Appellate counsel characterizes the letter as "indicative of his surprise," and not a self-serving recasting of events.[3] He maintains that he would not

---

**3.** The government maintains that defendant decided to "turn on Counsel Lewis" after receiving the initial presentence investigation report. In support, the government points to a letter from defendant, received October 30, 2000, listing several complaints and asking for new counsel. The government's argument is a mischaracterization of the facts. While

there is a letter dated October 30, defendant sent his first letter to the court on August 30, 2000, only two days after his change of plea hearing on August 28, clearly before he received the presentence report. In the first letter, defendant explained that he did not know about the 48–rule and expressed his dissatisfaction with Mr. Lewis' representa-

have rejected the offer if he were aware of the deadline. If such assertions are established at an evidentiary hearing, the Court should hold that failure to inform satisfies the first prong of the *Strickland* test.

Turning to the second prong of the *Strickland* analysis, the Court asks whether the defendant suffered prejudice from counsel's error. Under *Hill,* in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The Supreme Court has held that prejudice is present where counsel error results in an increase in defendant's sentence. *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) ("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.").

■ Here, Mr. Allen maintains that without the benefit of the plea bargain, he received more prison time than he would have under the plea. Under the plea, the government would have recommended a base level offense range of 28 with a five point downward adjustment for acceptance of responsibility and for being a minor participant. Had the court accepted the government's recommendation, defendant's imprisonment range would have been 51 to 63 months, whereas the imprisonment range applied without the plea agreement was 70 to 87 months, a difference of between seven to nineteen months. Since any increase in prison time is prejudicial, *Glover,* 531 U.S. at 203, this amount of prison time demonstrates prejudice. In addition, on August 27 and August 28,

defendant manifested a clear intent to enter into the plea agreement, demonstrating that but for counsel's error, he would have taken the plea bargain.

On the other hand, it could be there is no prejudice because defendant's sentence would have been identical under the plea bargain. The PIR applied the same base offense level, 28, that defendant would have received under the plea agreement, and he was given a two level adjustment for pleading guilty. Thus, only three more adjustment points are at issue: two for being a minor participant and one more acceptance of responsibility point.

Regarding the two point adjustment for being a minor participant, the PIR rejected that adjustment finding "each codefendant ... equally culpable." Since the plea agreement specifically states that the court is not bound by the government's recommendation, it is entirely possible that the district judge would have followed the PIR recommendation rather than the government's and rejected the minor participant adjustment.

As for the third acceptance of responsibility point, the PIR did not award it because defendant did not plead guilty until the morning of trial. The PIR stated that to get the third point "the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so the government may avoid preparing for trial and the Court may schedule its calendar efficiently." Defendant's claim that but for counsel's deficient performance he would have pleaded earlier, entitling him to the extra acceptance of responsibility point, may demonstrate prejudice. However, assuming this is the only point at issue, the guideline range for a base level of 25 is 63–

tion. The October 30 letter is merely the continuation, and not the first voicing, of de-

fendant's lack of deadline knowledge and discontent with Mr. Lewis.

78 months, and defendant's sentence of 70 months was within that range. Therefore, if only this last point at issue, then defendant may not have been prejudiced because his sentence was within the lower range.

Thus, it is not clear whether defendant was prejudiced by his counsel's allegedly deficient performance because it is pure speculation whether the sentencing judge would have followed the government's or the PIR's recommendation. Therefore, we must remand this issue—whether defendant satisfied the prejudice prong—to the district court for consideration in the first instance.

Assuming the district court finds defendant was prejudiced, then the remaining question is whether Mr. Allen knew about the deadline. As discussed above, there is an insufficient record upon which this Court could base a ruling regarding defendant's knowledge. Thus, if the district court finds prejudice, the district court must conduct an evidentiary hearing to ascertain defendant's knowledge of the deadline. If the district court finds both prejudice and that defendant did not know about the deadline, the court should reinstate the government's plea offer as a remedy.

## V. CONCLUSION

For the reasons stated above, we RE-MAND to the district court with instructions to determine prejudice in the first instance. If the court finds prejudice, then it should conduct an evidentiary hearing regarding Mr. Allen's knowledge of the deadline. If, after an evidentiary hearing, the district court finds that Mr. Allen did not know about the deadline, we instruct the court to reinstate the lapsed plea bargain as a remedy, returning defendant to the position he was in before the constitutional violation occurred.