NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  16a0285n.06

Case No. 14-6148

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 31, 2016
DEBORAH S. HUNT, Clerk

WILLIAM FAISON,                               )
                                              )
        Petitioner-Appellant,                 )
                                              )        ON APPEAL FROM THE UNITED
v.                                            )        STATES  DISTRICT  COURT  FOR
                                              )        THE   EASTERN   DISTRICT   OF
UNITED STATES OF AMERICA,                     )        KENTUCKY
                                              )
        Respondent-Appellee.                  )
                                              )        OPINION
                                              )

BEFORE:  MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

        **BERNICE BOUIE DONALD, Circuit Judge.**  Petitioner-Appellant William Faison filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, asserting that he is entitled to an evidentiary hearing on two ineffective-assistance-of-counsel claims.  Those claims are (1) that his two trial attorneys were ineffective for allowing a plea agreement offer to lapse when neither advised the government or the court that Faison had accepted the plea agreement and (2) that his appointed trial attorney improperly solicited a retainer fee, creating a conflict of interest.  Declining to hold an evidentiary hearing, the district court denied his claims.  We granted a certificate of appealability on both issues.  For the reasons stated below, we **REVERSE** the district court's judgment denying an evidentiary hearing and **REMAND** for further proceedings not inconsistent with this opinion.

I.

On November 5, 2009, a federal grand jury returned a superseding indictment against Faison, charging him with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess with intent to distribute a controlled substance, in violation of § 841(a)(1). *See* 21 U.S.C. § 846. During arraignment, Faison indicated that his family may have the funds to pay for a private attorney. Until he could ascertain the funds, a magistrate judge appointed Cullen Gault as Faison's counsel pursuant to the Criminal Justice Act (CJA).

After the arraignment, Gault sent Faison several emails concerning his case. On November 24, 2009, Gault emailed Faison about signing a waiver of his right to a speedy trial and stated the following: "I [] discussed with your father [] retaining this office to represent you in this matter. As I informed your father, there will be a $7,500.00 retainer and this Firm charges $215.00 per billable hour for an attorney." R. 727-1, PageID #1984. Approximately a week later, Gault emailed Faison again. In its entirety, the email stated,

> I am writing to inquire as to whether you sent the $7,500.00 retainer check. As of today's date, I have not received it. Please remember I am appointed only until you retain an attorney. You have a jury trial date of January 25, 2010 in Lexington, KY and a Motions Hearing scheduled for December 17, 2009 in Lexington, KY.

*Id.* at 1986. Lastly, on December 15, 2009, Gault emailed Faison concerning the plea agreement, stating, "I just mailed you . . . a proposed Plea Agreement. As far as the Plea Agreement, I am ethically obligated to forward you this document. I fully expect you to resolve this matter at your jury trial." *Id.* at 1988. Then, Gault mentioned that the Assistant U.S. Attorney had spoken to him about the evidence that he would be presenting at trial. Gault pressed, "It is imperative that we discuss your case this week so I can receive your input." *Id.* Finally, Gault stated,

"I also still need the $7,500.00 retainer check. Please remember you informed the Magistrate you were going to retain an attorney, and I am appointed pursuant to the CJA statute until that time." *Id.* Gault included an address where Faison could send a check and concluded the email by stating, "Please send the check via overnight mail so I receive it this week." *Id.*

Faison lost confidence in Gault's representation based on Gault's requests for a retainer fee. He resolved to ask his parents to pay for an attorney in lieu of Gault. However, Faison still signed the plea agreement and returned it to Gault with the intent to plead guilty in accordance with the plea agreement.

On January 18, 2010, Gault filed a motion requesting rearraignment, indicating Faison wished to plead guilty. A week later, the district court held a rearraignment hearing prior to the start of trial that day. After the court began the hearing, Gault stated that his office had received a phone call from Sheldon Halpern, an attorney whom Faison had contacted about representing him. Gault then requested a continuance, asking that he be allowed "to withdraw for a short period of time . . . to allow [Faison] to retain Mr. Halpern." R. 351, PageID #843. The court granted the continuance and verified that Gault would remain Faison's attorney until Halpern could enter an appearance and set a trial date. It then asked both Gault and the United States if there was anything else, and Gault asked that Faison remain subject to the same terms and conditions of his bond until the new trial date. The court granted the request.

After the rearraignment hearing, Gault sent Faison a letter. It stated, in part, "After your court appearance, Ron Walker, Assistant United States Attorney, informed me the proposed Plea Agreement was null and void and he would be issuing [a Superseding] Indictment in this matter." R. 771-1, PageID #2155. The United States Attorney's Office also sent a follow-up correspondence after the rearraignment hearing to Faison and Gault. It stated,

> This letter will confirm our discussion about the status of this case after your client's request to obtain new counsel and not proceed with the guilty plea.
> As I informed him during the telephone conference from my office with you and Mr. Faison being in Detroit, there will likely be a superseding indictment that will add new charges and another co-defendant.

R. 727-1, PageID #1996. The letter noted that "because the plea agreement terms have been rejected, there will be a new plea agreement." *Id.* On February 4, 2010, the grand jury returned a superseding indictment adding a count for conspiracy to commit money laundering. The magistrate judge subsequently granted Halpern's motion to appear *pro hac vice* and relieved Gault's CJA appointment.

On May 24, 2010, Faison pleaded guilty to both counts in the superseding indictment. There was no plea agreement in place. Faison's presentence report ("PSR") recommended a total offense level of 33 and assigned him to criminal history category III, which resulted in a U.S. Sentencing Guidelines range of 168 to 210 months' imprisonment. The government recommended a sentence of 168 months. Because Faison accepted responsibility and to prevent a sentencing disparity between the defendants, the district court granted Faison a downward variance and sentenced him to 132 months' imprisonment.

Faison filed the instant 28 U.S.C. § 2255 motion, seeking to vacate his sentence, asserting that Gault and Halpern provided ineffective assistance of counsel in violation of the Sixth Amendment when they failed to inform either the government or the court that Faison had accepted the plea agreement. He also contended that Gault was ineffective for improperly soliciting funds from him. Faison attached a personal affidavit, in which he stated that "Attorney Gault repeatedly asked me and/or my family to pay him a retainer in the amount of Seven Thousand Five Hundred ($7,500.00) Dollars, even though he had been appointed through the Criminal Justice Act." R. 727-1, PageID #2008. Additionally, Faison stated that he had signed

and returned the original plea agreement to Gault and that he had "never asked [Gault] not to forward to executed Plea Agreement." *Id.* at 2008-09. Lastly, Faison claimed that "Halpern specifically advised me that the Plea Agreement could still be accepted if he were representing me." *Id.* at 2009.

The district court declined to hold an evidentiary hearing and denied Faison relief. It concluded that neither attorney's performance fell below an objectively reasonable level. The district court also found that Faison was not prejudiced by the attorneys' actions, "as he was ultimately sentenced within the range he insists would have applied under the original plea agreement." R. 786, PageID #2220. Faison appealed.

We granted a certificate of appealability on two issues: "(1) whether Gault rendered ineffective assistance by requesting a retainer fee; and (2) whether Gault and Halpern rendered ineffective assistance by permitting the original plea offer to lapse because neither the district court nor the government were advised that Faison had accepted the offer." R. 820, PageID #2390.

## II.

Faison contends that he is entitled to an evidentiary hearing and relief on the merits for his ineffective-assistance-of-counsel claims. "A prisoner who proves that the process leading to his conviction was tainted by an 'error of constitutional magnitude' is entitled to relief under § 2255." *Valentine v. United States*, 488 F.3d 325, 331 (6th Cir. 2007) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). While we will only overturn the district court's factual findings if they are clearly erroneous, we review the district court's denial of a § 2255 motion de novo. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Ineffective-assistance-of-counsel claims are mixed questions of law and fact, which we also review de

novo. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006). "Although we review a district court's refusal to conduct an evidentiary hearing with respect to a defendant's § 2255 motion only for abuse of discretion, such a hearing 'is required unless the record conclusively shows that the petitioner is entitled to no relief.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

A.

The Sixth Amendment right to counsel is essential to "protect[ing] the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). The right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, defendants must first show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. They must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Defendants must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Supreme Court has explained where "a plea offer has lapsed or been rejected because of counsel's deficient performance," to show prejudice

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . . To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

Furthermore, "[w]here there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). Unless the record "conclusively show[s] that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing [to] determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). In other words, "the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008). The burden "for establishing an entitlement to an evidentiary hearing is relatively light." *Turner*, 183 F.3d at 477. At the same time, something more than "mere assertions of innocence" is required. *Valentine*, 488 F.3d at 333; *see Turner*, 183 F.3d at 477 ("[I]t would be nonsensical to conclude that the petitioner could meet that burden . . . by proclaiming his innocence.").

i.

Faison and the government disagree about whether there was a deadline associated with accepting the plea agreement that Gault and Halpern allegedly let lapse. The record contains facts supporting both arguments, which necessitates an evidentiary hearing. First, contrary to the government's assertions, there is evidence in the record that a deadline existed. In its brief before the magistrate judge, the government indicated that Faison "has previously specifically acknowledged knowing that the United States intended to void the original plea offer upon his request for new counsel at the first re-arraignment hearing and decided to pursue new counsel." R. 740, PageID #2053. However, there is no indication of when or where that acknowledgment occurred. The letter from the U.S. Attorney's Office also supports a finding that the

- 7 -

rearraignment hearing constituted a deadline for accepting the plea agreement: "This letter will confirm our discussion about the status of this case *after your client's request to obtain new counsel and not proceed with the guilty plea*." R. 771-1, PageID #1996 (emphasis added). Notably, the record lacks a statement from Gault about whether he knew of a deadline or informed Faison of that deadline. *See United States v. Allen*, 53 F. App'x 367, 372 (6th Cir. 2002) (noting a lack of "testimony from either defendant or defendant's original counsel regarding whether defendant knew" of the deadline for accepting the plea agreement).

At the same time, none of Gault's communications to Faison reveal the existence of a deadline. When Gault emailed Faison the plea agreement, he did not mention a deadline for signing and returning the plea agreement. Gault informed Faison of the government's decision to revoke the plea agreement in a letter in which he stated, "After your court appearance, Ron Walker, Assistant United States Attorney, informed me the proposed Plea Agreement was null and void and he would be issuing [a Superseding] Indictment in this matter." R. 771-1, PageID #2155. While it may be that Gault did inform Faison of the expiration of the plea agreement, it may also be that Faison pursued the change in counsel because he did not know the favorable plea offer would expire. Making such a determination requires an evidentiary hearing.

Faison and the government also dispute whether Gault was ineffective for failing to inform the government and the court that Faison wished to plead guilty at the rearraignment hearing. Contrary to Faison's assertions, it was Gault who requested the rearraignment hearing. This inherently puts the government and the court on notice that Faison wished to change his plea and, presumably, accept the conditions of the plea agreement. Faison's assertions are also contradicted by Gault's email in which Gault explained that he "fully expect[s] you to resolve this matter at your jury trial." R. 727-1, PageID #1988. If Gault had

wished to go to trial, it would not follow that Gault would move for a rearraignment hearing if it were not for Faison's decision to plead guilty.

Ultimately, it is unclear from the record whether Faison still wanted to plead guilty at the rearraignment hearing, despite the change in counsel. Faison asserts that he did, which is why he returned the signed plea agreement to Gault. It may be that, as Faison asserts, Gault wrongfully let a favorable plea agreement offer lapse; however, it may also be that, as the government asserts, Gault was simply attempting to abide by Faison's wishes that Halpern represent him. The answer turns on whether Gault knew there was a deadline for accepting the plea agreement, which the record does not reveal. An evidentiary hearing is thus appropriate, as the record does not "conclusively show" that Faison is not entitled to relief. § 2255(b).

We therefore consider whether Faison may be entitled to relief under *Strickland*. *See Allen*, 53 F. App'x at 374, 377 (reviewing the *Strickland* claim after concluding that the petitioner was entitled to an evidentiary hearing). The government concedes that if Gault had failed to inform the government and the court that Faison wanted to plead guilty in accordance with the proposed plea agreement, his conduct would constitute ineffective assistance of counsel. *See Frye*, 132 S. Ct. at 1408 ("When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires."). Thus, we need only analyze whether Faison has demonstrated prejudice.

In finding no prejudice existed, the district court reasoned that Faison "was ultimately sentenced within the range he insists would have applied under the original plea agreement." R. 786, PageID #2220. The government also asserts this argument. However, Faison asserts that "without the benefit of the plea bargain, he received more prison time than he would have under

the plea." *Allen*, 53 F. App'x at 376. Faison cites to *Glover v. United States*, 531 U.S. 198, 203 (2001), for the proposition that "any amount of actual jail time has Sixth Amendment significance."

The plea agreement recommended a base offense level of 32 and a three-level reduction for acceptance of responsibility for a total base offense level of 29. Although it did not state a criminal history category, it calculated a Guidelines range of 108 to 135 months' imprisonment. Instead of pleading guilty under those terms, Faison pleaded guilty without a plea agreement in place. Based on a Guidelines range of 168 to 210 months' imprisonment, the government recommended a sentence of 168 months. The district court accepted the government's suggestion and applied a downward variance based on Faison's acceptance of responsibility and in an effort to prevent disparity between Faison's sentence and those of his co-defendants. It then sentenced Faison to 132 months' imprisonment.

Faison has demonstrated that Gault's alleged actions prejudiced him. He has shown that he would have accepted the plea offer because he has alleged that he signed and returned it to Gault. This assertion is consistent with the record. At the rearraignment hearing, nothing suggested that the court would not have accepted such an agreement or that the agreement was otherwise unavailable. Indeed, there is evidence in the record that the rearraignment hearing was the deadline for accepting the agreement. Faison has also demonstrated that the outcome of his sentencing most likely would have been different had he accepted the plea agreement. Any disparity between the Guidelines range applied and the lapsed plea agreement Guidelines range may give rise to prejudice. *Cf. Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) (concluding that the harmless error standard does not require a "further showing of prejudice beyond the fact that the erroneous, and higher, Guidelines range set the wrong framework for the

sentencing proceedings" and that "[t]his is so even if the ultimate sentence falls within both the correct and incorrect range").

Furthermore, at sentencing, the government recommended a sentence at the low end of the PSR's range, which the district court adopted.  The district court may have sentenced Faison in the low end of the Guidelines range stated in the plea agreement, which would have resulted in a lower sentence.  *Cf. United States v. Rayford*, 496 F. App'x 767, 769 (10th Cir. 2012) (noting that in a previous case "the district court chose a bottom-of-the-guidelines sentence under the improperly applied guidelines range, and [therefore,] the court might choose a bottom-of-the-guidelines sentence under the correct range as well").  As Faison points out, any increase in jail time is prejudicial.  *See Allen*, 53 F. App'x at 376; *see also Glover*, 531 U.S. at 203 (explaining that prior precedent "does not suggest that a minimal amount of additional time in prison cannot constitute prejudice").  Thus, Faison has met *Strickland*'s prejudice prong.  Because Faison has asserted more than conclusory statements demonstrating that he is entitled to relief, he meets the "relatively light" burden of demonstrating that he is entitled to an evidentiary hearing.  *Turner*, 183 F.3d at 477.

Second, Faison claims that Halpern was also ineffective for allowing the plea agreement offer to lapse.  He states that he retained Halpern to represent him at the guilty plea hearing and sentencing and thus, Halpern was representing him when Halpern provided advice concerning the plea offer.  The government argues that even if Halpern gave Faison such advice, Halpern was not representing Faison before the court during the rearraignment hearing and thus could not have provided ineffective assistance of counsel.

The record does not conclusively show that Faison is not entitled to relief.  In *United States v. Martini*, 31 F.3d 781, 782 (9th Cir. 1994), the defendant's original lawyer had advised

him to accept a plea deal. Unhappy with that suggestion, the defendant sought advice from another lawyer, who advised him that his case might be "triable." *Id.* The defendant then claimed that the second opinion he received constituted ineffective assistance of counsel. *Id.* Reviewing the claim, the Ninth Circuit explained that "[f]or a lawyer's advice to constitute ineffective assistance of counsel, it must come from a lawyer who is representing the criminal defendant or otherwise appearing on the defendant's behalf in the case." *Id.* In other words,

> [t]he Sixth Amendment right to effective assistance of counsel guaranteed under *Strickland* [] does not include the right to receive good advice from every lawyer a criminal defendant consults about his case. Instead, it comprises only the right to the effective assistance of counsel guaranteed by the Sixth Amendment—that is, counsel who represents the criminal defendant and helps to prepare his defense.

*Id.* However, the Ninth Circuit was careful to note that "[i]f a criminal defendant in fact receives effective assistance of counsel from the lawyer he has retained to meet the prosecution's case, he cannot later claim that he received ineffective assistance of counsel from another lawyer he chose to consult." *Id.* at 782-83. We repeated this tenet in *Santosuosso v. United States*, 74 F.3d 1240, *3 (6th Cir. Jan. 16, 1996) (per curiam) (table decision).

Here, unlike in *Martini* or in *Santosuosso*, Faison does assert that Gault was ineffective. As we previously explained, the record is unclear as to whether Gault was ineffective. Therefore, Faison may be able to assert an ineffective-assistance claim against Halpern as well. *See Santosuosso*, 74 F.3d at *3. Relevantly, the government concedes that a failure to notify the court of a defendant's decision to plead guilty meets *Strickland*'s first prong. Faison has demonstrated that he may have been prejudiced by his failure to plead guilty pursuant to the proposed plea agreement. Therefore, Faison is entitled to an evidentiary hearing on this issue as well.

ii.

Finally, Faison claims that Gault's repeated requests for a retainer fee created a conflict of interest that constitutes ineffective assistance of counsel under *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). He argues that "Mr. Gault's failure to pass along the signed plea agreement or advise Mr. Faison about the government's deadline can only be explained by his decision not to prioritize Mr. Faison's case because he had not paid the requested retainer fee." Appellant Br. 23. Faison also asserts that he is entitled to an evidentiary hearing on this claim.

The government, on the other hand, asserts that *Strickland*—and not *Sullivan*—applies; however, it concedes Faison's arguments that his counsel's actions were improper under the CJA Plan for the Eastern District of Kentucky as well as 18 U.S.C. § 3006A(f). It nonetheless asserts that Faison cannot demonstrate that he was prejudiced by Gault's actions, despite the fee requests. *See United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997) (explaining that the court has never "held that failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, gives rise to a conflict of interest"). The government contends that Faison is not entitled to an evidentiary hearing on this issue, as his allegations fall under the category of "inherently incredible." *Amr*, 280 F. App'x at 485.

Because the record contradicts Faison's assertions, he is not entitled to an evidentiary hearing. Gault's requests for the retainer fee did not indicate that the adequacy of his performance was based on whether he was actually retained. *See Friedman v. United States*, 588 F.2d 1010, 1016 (5th Cir. 1979) (explaining that the attorney indicated directly to the defendant "that the court-awarded fee would be too meager to justify more than a perfunctory effort"). This belies Faison's conclusory and self-serving statement that Gault purposefully did not proffer the signed plea agreement at the rearraignment hearing as some sort of atonement for

failing to pay the retainer fee. *See Amr*, 280 F. App'x at 485 (explaining that defendants are not entitled to an evidentiary hearing if their statements are "conclusions rather than statements of fact").

As the record is complete, we turn to the ineffective-assistance-of-counsel claim. This Court has yet to apply *Sullivan*, a higher standard than *Strickland*, to a fee dispute. *See Mickens v. Taylor*, 535 U.S. 162, 176 (2002). However, even if we were to apply this standard, Faison has not demonstrated that "(1) his attorney had an actual conflict of interest, and (2) the conflict adversely affected the attorney's performance." *Lugo v. United States*, 349 F. App'x 484, 486 (11th Cir. 2009).

This case mirrors *Lugo*, where the petitioner argued "that his [appointed] counsel had a financial conflict of interest stemming from the refusal of Lugo's family to hire him as a private attorney." *Id.* The Eleventh Circuit required the petitioner to show an "actual financial conflict," where the attorney "actively represented his own financial interest" to the detriment of the petitioner. *Id.* at 486-87. The court concluded that "[w]hile Lugo did present evidence that his appointed trial counsel had unsuccessfully tried to solicit Lugo's family to retain him privately, he has not shown that his counsel's performance suffered as a result of that attempt." *Id.* at 487. Although counsel failed to inform Lugo of a plea agreement offer (one the district court found Lugo would have rejected anyways), the court found his counsel's performance at trial to be otherwise adequate. *Id.*

Here, Gault requested the rearraignment hearing to allow Faison to plead guilty. Like the attorney in *Lugo,* Gault actively pursued Faison's wishes—namely, to plead guilty pursuant to the offered plea agreement. At the beginning of the hearing, Gault indicated that Faison had contacted Halpern about representing him. Gault specifically stated to the court that he wanted

to do what was in Faison's best interest concerning Faison's representation. Furthermore, Gault did protect Faison's best interests by securing the same bond conditions for Faison while the matter was continued. Whether Gault should have notified the government or the court of Faison's decision to plead guilty at the rearraignment hearing is a separate question. Thus, the record does not suggest that Gault placed his own financial interest above the interests of the petitioner.

Moreover, Faison has not demonstrated that his refusal to pay the retainer fee adversely affected Gault's performance. To meet *Sullivan*'s second prong, Faison must show "(1) his attorney could have pursued a plausible alternative strategy, (2) the alternative strategy was reasonable, and (3) the alternative strategy was not followed because it conflicted with the attorney's own interests." *Lugo*, 349 F. App'x at 487. Nothing in Gault's communications indicates that Gault changed his conduct or advice based on the inability to obtain a retainer fee from Faison. *See Friedman*, 588 F.2d at 1016. Additionally, there is no evidence that a failure to submit the signed plea agreement affected Gault's own financial interests. Because Faison had already decided to replace Gault with Halpern, Gault was not financially incentivized either way in entering the plea agreement at the rearraignment hearing. Instead, the record only shows Gault attempting to honor and abide by Faison's wish to be represented by Halpern. The record conclusively shows that Gault is not entitled to relief or an evidentiary hearing on this claim.

III.

For the foregoing reasons, we **REVERSE** the district court's judgment denying an evidentiary hearing and **REMAND** for proceedings not inconsistent with this opinion.