*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0453p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellant,*

*v.*

No. 05-2133

RICHARD MORRIS,

    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-80200—Arthur J. Tarnow, District Judge.

Argued: July 20, 2006

Decided and Filed: December 7, 2006

Before: MARTIN and COLE, Circuit Judges; JORDAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. John R. Minock, CRAMER & MINOCK, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. John R. Minock, CRAMER & MINOCK, Ann Arbor, Michigan, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Defendant Richard Morris was charged in Michigan state court with three firearm and drug related charges. The investigation and prosecution of his alleged crimes was conducted through Project Safe Neighborhoods, a joint effort between the federal government and Michigan state authorities to address problems related to gun violence. Morris initially pled not guilty to charges brought in state court, at which point they were dropped. His case was then referred to the United States Attorney's office and he was eventually indicted in federal court. He subsequently filed a motion to "remand" to state court, on the basis that he was denied effective assistance of counsel in the state proceedings. After conducting two days of

_____

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

evidentiary hearings, the district court agreed that Morris was denied effective assistance of counsel, and granted his motion.  The government now appeals.

I.

On February 25, 2004, Morris was arraigned in state court on charges of possession and delivery of marijuana, felon in possession of a firearm, and unlicensed possession of a concealed firearm, in violation of MICH. COMP. LAWS §§ 333.7401, 750.224(f), and 750.227(b), respectively. He requested and was assigned counsel on February 26, 2004, the date on which communication between state and federal authorities began regarding their cooperative effort to prosecute Morris. On March 3, 2004, he took part in a "pre-preliminary examination"[1] as part of Project Safe Neighborhoods.

Immediately before this examination, Morris met with his attorney for the first time.  She advised him of a state plea offer as well as the federal sentencing guideline range as she understood it.  The state's offer encompassed the charges of possession with intent to deliver marijuana and unlicensed firearm possession, and included a sentence of one to four years for the marijuana count, plus two consecutive years for the unlicensed firearm possession count.  Morris's attorney, who had not practiced in federal court and had no experience interpreting the Federal Sentencing Guidelines, had been given an estimate of his federal guideline range by the state prosecutor, who had himself been advised of the range by an Assistant United States Attorney.  This estimate was 62 to 68 months, and defense counsel passed it on in turn to Morris.  As it turned out, this estimate was incorrect.  Morris was in fact subject to a federal guidelines range of 90 to 97 months if he pled guilty, or 101 to 111 months if he did not.[2]  Morris's attorney, who had not received complete discovery at the time, was able to speak only briefly with her client in the "bull pen."  The "bull pen" is a cell located behind a courtroom. It is usually crowded with detainees and requires attorneys and clients to shout their communication.  Attorneys, court personnel, and officers often walk the corridor where the bull pen is located, further diminishing attorney-client privacy. Morris's attorney was forced to communicate with him through a meshed screen in the presence of other detainees.

Immediately after this meeting, Morris was taken into the pre-preliminary examination, where the prosecution made a plea offer — one to four years for the marijuana charge, plus two consecutive years for the felony firearm charge.  The offer required an immediate decision by Morris. The judge informed him that if he declined, he would be referred to federal court to answer charges which could result in a more severe sentence.  Morris was not able to discuss his options privately with his attorney.  His attorney did not have knowledge of the strength of the case; nor was she given time to investigate or interview witnesses.  He rejected the state's offer and was referred to federal court pursuant to Project Safe Neighborhoods, with the understanding that his federal guideline range would be 62 to 68 months.

The government filed an indictment in the district court on March 18, 2004.   On September 9, 2004, Morris filed a motion in the district court to remand to state court on the ground that his state court trial attorney's failure to properly advise him of the applicable federal sentencing range, in conjunction with the system of attorney consultation, denied him his Sixth Amendment right to counsel. After two days of evidentiary hearings, the district court granted Morris's motion. It reasoned that Project Safe Neighborhoods was a joint effort between state and federal prosecutors,

---

[1]The pre-preliminary examination procedure was established to reduce jail overcrowding by expediting cases via acceptance of plea offers.

[2]It is unclear from the record whether the erroneous 62 to 68 month range was based on Morris pleading guilty in federal court or going to trial, but because it was stated as a condition of him being generally unwilling to plead guilty, presumably it was the estimate of the sentence he would have faced if found guilty at trial.

and it thus had "power to remedy any constitutional errors" in the state proceedings. D. Ct. Op. at 6. The district court also found that the pre-preliminary examination was a critical stage of the proceedings at which point the right to counsel attached under *Powell v. Alabama*, 287 U.S. 45, 57 (1932). Finally, the district court concluded that Morris suffered a constructive absence of counsel and was denied effective assistance of counsel, and that the appropriate remedy was to dismiss the federal charges and reinstate the state plea offer.

## II.

In reviewing the dismissal of an indictment, we review de novo the district court's legal conclusions, and "the factual findings supporting its ruling for clear error." *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir. 1998).

### A. The District Court's Ability to Remedy the Constitutional Violation in State Court

At the outset, we address the government's claim that the district court had no authority to address perceived constitutional errors in the state proceedings by dismissing the federal indictment and "remanding" to state court. We agree with the government that the district court lacked jurisdiction to remand the case to state court. The district court does have authority to enforce a plea agreement, however. *United States v. Lukse*, 286 F.3d 906, 910 (6th Cir. 2002). We have held that plea agreements are contractual in nature and interpreted using traditional principles of contract law, and that a district court can utilize specific performance to remedy any breach of the agreement. *Id*. Of course in this case an agreement was never reached on the state court plea offer. Even so, under *Hill v. Lockhart*, 474 U.S. 52 (1985), a criminal defendant is entitled to competent advice of counsel in plea negotiations. Further, where the state extends a plea offer but simultaneously denies a defendant the effective assistance of counsel at the plea stage, a necessary part of the district court's remedial authority include its ability to put the defendant back in the position he would have been but for the ineffective assistance of counsel. *Tennessee v. Turner*, 858 F.2d 1201, 1205 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902 (1989), *reinstated*, 726 F. Supp. 1113 (M.D. Tenn. 1989), *aff'd*, 940 F.2d 1000 (6th Cir. 1991), *cert. denied*, 502 U.S. 1050 (1992) ("[T]he only way to neutralize the constitutional deprivation suffered by Turner would seem to be to provide Turner with an opportunity to consider the State's two-year plea offer with the effective assistance of counsel."); *United States v. Allen*, 53 Fed. App'x 367, 373-74 (6th Cir. 2005) ("[I]f it were shown that defense counsel provided ineffective assistance, the remedy is to compel the government to reinstate the prior plea offer, restoring Mr. Allen to where he was before ineffective assistance was rendered.").

This case is different from *Turner* or *Allen*, in that *Allen* involved a plea offer made in a federal prosecution that was under direct review, and *Turner* was a habeas corpus appeal, where the federal courts have explicit statutory authority to remedy constitutional violations in state court prosecutions. Here, instead, we are faced with a federal prosecution, before us on direct review, where the defendant seeks to reinstate a plea offer made in state court. The rationale of *Turner* and *Allen* applies with equal force here, however, because there is significant evidence in the record that the United States Attorney's office was involved with the state court plea negotiations pursuant to Project Safe Neighborhoods. Most importantly, the United States Attorney's Office was involved in deciding whether a plea offer would be made available to Morris in state court, and the state court plea offer included an agreement that Morris would not be prosecuted in federal court, even though the state and federal governments could have chosen to pursue separate prosecutions. Because the United States Attorney's Office made itself a party to the state court plea offer, the district court was justified in enforcing the plea offer against it based on traditional principles of contract law. Although there is no basis for the purported remand to state court and the related reinstatement of

the state plea offer, dismissal of the federal indictment was within the district court's authority[3] to put Morris back in the position he would have been in but for the denial of his right to counsel in light of the federal prosecutor's entanglement with the state plea process.

## B. Denial of Sixth Amendment Right to Counsel

The government also challenges the district court's conclusion that Morris was denied the effective assistance of counsel in violation of the Sixth Amendment. The district court's ruling was based both on the rule of constructive absence of counsel from *United States v. Cronic*, 466 U.S. 648 (1984), and its determination that Morris had a viable claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill*. We agree with both of these conclusions.

We have described the standard for constructive denial of counsel under *Cronic* as follows:

> If a claim is governed by *Cronic*, . . . the defendant need not demonstrate any prejudice resulting from the lack of effective counsel; in some cases, the Sixth Amendment violations are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. Three types of cases warrant *Cronic*'s presumption-of-prejudice analysis. The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" The second is when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

*Mitchell v. Mason*, 325 F.3d 732, 741-742 (6th Cir. 2003).

Based on this standard, the district court found that Wayne County's practice of assigning counsel shortly before the pre-preliminary examination amounts to a "state impediment to effective assistance of counsel." D. Ct. Op. at 13. The district court based this determination on the extremely short time period that the system allows appointed counsel to prepare for the hearing, the lack of privacy afforded in the bull pen, which prohibits counsel from having a confidential, privileged conversation with the client before the hearing, and the requirement that a defendant make an immediate decision regarding the plea offer.[4] As the district court pointed out, ABA Standards for Criminal Justice provide that a thorough discussion with the client is necessary at the outset of representation, which is entirely precluded by the lack of time and confidentiality under the Wayne County system. *See* 1 ABA Standard for Criminal Justice 1(a) & (b). Further, defense counsel is

---

[3] By way of analogy, we note that dismissal of an indictment is part of a district court's authority to remedy other constitutional violations, such as in cases of prosecutorial misconduct. *See United States v. Adamo*, 742 F.2d 927, 942 (6th Cir. 1984). Dismissal of the indictment here goes no further than the district court's remedial authority in that context.

[4] The district court also expressed its skepticism with the fee system for appointed counsel, by which they are paid $40 for appearing at the pre-preliminary hearing when no plea is entered, and even if they request a continuance are paid no additional fee beyond the $40, while if their client accepts the plea, they receive "a minimum of $500 to $700." D. Ct. Op. at 12. This fee structure clearly provides counsel an incentive to encourage the defendant to accept the state's plea offer immediately, and a disincentive to seek more time to investigate and seriously weigh the merits of a defendant's case. Although the district court stated that "Project Safe Neighborhoods, on an *institutional* level, is a state barrier to counsel for indigent defendants," D. Ct. Op. at 13, (emphasis in original) and the district court's troubling observations as to the incentives created by the fee structure find support in the record, it appears to have based its ultimate determination on the time constraints and lack of privacy, rather than the fee structure. Our review thus focuses primarily on these factors, even though we are similarly concerned by the incentives created by the fee structure.

given very little time to review any discovery material before advising her client regarding a plea. Although the district court did not explicitly state which type of "*Cronic* failure" it found this situation analogous to, given its factual findings, we have no trouble agreeing that in this case "counsel was placed in circumstances in which competent counsel very likely could not render assistance." *Mitchell*, 325 F.3d at 742. As a result, Morris is presumed to have been prejudiced by the situation in which his attorney was placed, and has a valid claim of constructive denial of counsel.[5]

The government contends that "[t]he fact that his attorney actually gave him legal advice is simply inconsistent with a conclusion that counsel was not acting as a lawyer during the defendant's consideration of the state plea offer." This argument ignores the rule from *Cronic* that constructive denial of counsel can occur under circumstances where even competent counsel could not render assistance. The fact that Morris's counsel gave him *some* advice does not preclude a finding of constructive denial of counsel under this standard. Rather, the circumstances, such as the lack of time for adequate preparation and the lack of privacy for attorney-client consultation, would have precluded any lawyer from providing effective advice. This is demonstrated here in part by the fact that Morris's counsel was precluded from taking basic preparatory steps such as looking at his prior record in conjunction with the federal sentencing guidelines so as to make an accurate prediction of his guideline range, and instead had to rely on the erroneous estimate provided by an Assistant United States Attorney of 62-68 months, where the actual guideline range was either 90-97 months or 100-111 months, or roughly 50 percent higher than the estimate provided. The inability of Morris's counsel to accurately estimate his federal sentencing guideline range and the resulting incorrect estimate factored into Morris's calculus in contemplating the state's plea offer.

We also agree with the district court that Morris was denied the effective assistance of counsel under *Strickland* and *Hill*. *Strickland* requires two elements to establish an ineffective assistance of counsel claim: (1) counsel's performance must have fallen below an objective standard of reasonableness, and (2) there must be a reasonable probability that but for the deficient performance, the outcome of the proceedings would have been different. 466 U.S. at 694. *Hill* applied this test in the context of plea offers, requiring that a defense attorney inform her client of plea offers and the potential penalties, and held that to establish an ineffective assistance of counsel claim, a defendant must show (1) that he did not receive such advice, and (2) "a reasonable probability that he would have pleaded guilty had he received proper advice." *Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003).

This Court has given special weight to significant disparities between penalties offered in a plea and penalties of a potential sentence in determining whether a defendant suffered prejudice by not accepting a plea offer. *Id*. at 737 ("[A] substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer.") (quoting *Dedvukovic v. Martin*, 36 Fed. App'x 795, 798 (6th Cir. 2002)). The district court followed this approach here, reasoning that Morris stood to be sentenced to 101 to 111 months if he did not plead guilty and was convicted in federal court, which was almost double the 60 to 68 months estimated when the state made its initial plea offer. Because Morris's attorney was unfamiliar with the Federal Sentencing Guidelines and was forced to rely on the erroneous estimate provided by the prosecutor, her advice to Morris "fell below an objective standard of reasonableness." Because Morris, in turn, relied on the erroneous information, he suffered prejudice

---

[5]This is not to say that the government is somehow prohibited from making "take it or leave it" plea offers, but merely that by making such an offer, they cannot thereby avoid the requirement of *Hill* that a defendant be provided effective assistance of counsel at the plea-bargaining stage of a criminal proceeding.

and his "ability to make an intelligent decision regarding a plea offer [was] severely undermined." *Id.* (citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).

The government contends that it is relevant for Morris's *Strickland* claim that he maintained his innocence in discussions with his attorney pursuant to the state-court proceedings.[6] As the district court found, factoring in Morris's assertion of his innocence would inappropriately punish him for exercising his Fifth Amendment right against-self incrimination. Considering that the lack of privacy afforded Morris and his counsel prevented him from having a confidential consultation, his assertion of his innocence is even more irrelevant, as it was not even made in a confidential or privileged conversation. Further, viewing Morris's assertion of his innocence as a relevant consideration would be at odds with this Court's precedent, which clearly establishes that it "does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea." *Griffin*, 330 F.3d at 738.

### III.

For the foregoing reasons, we affirm the district court's conclusion that Morris was denied the effective assistance of counsel under both *Cronic* and *Hill*. Because the district court lacks authority to remand the case to state court, we reverse that portion of its order, but conclude that it does have the authority to dismiss the federal indictment in order to remedy the constitutional violation. The case is remanded to the district court for further proceedings consistent with this opinion.

---

[6] The government raised this issue with regard to the constructive denial of counsel claim as well. Because this argument only goes to the prejudice prong of *Hill* — i.e., whether the defendant would have pled differently without the erroneous advice — and because prejudice is presumed in a constructive denial of counsel claim under *Cronic*, this point is not relevant to the constructive-denial-of-counsel claim.