Justice ALBIN,
dissenting.
Sadly, today the majority holds that the right to effective assistance of counsel guarantees nothing more than the presence *73 of an appointed attorney at counsel’s table — even if that attorney met with his indigent client for the first time on the day of trial and had no time to consult with him about his case or prepare with him a defense as the trial began. The majority also exalts the trial calendar over a just trial, affirming a judge’s decision that denied an adjournment to a woefully unprepared appointed attorney who was forced to stumble through a suppression hearing, calling his client without having spoken with him about the case and not calling witnesses to support his client’s account.
Defendant Terrence Miller was charged with serious drug offenses and faced a prison sentence — and he was indigent, leaving him dependent on the State to appoint counsel for him. Indeed, Miller’s fate — and any success he might have at trial — was tied to his ability to prepare a defense after consultation with counsel.
Yet, Miller did not meet his appointed counsel until the day of trial, and the judge’s intransigence and his attorney’s unpreparedness rendered his suppression hearing and trial a farce. Miller, an impoverished defendant, was treated as just another fungible item to be shuffled along on a criminal-justice conveyor belt. But Miller is more than another dispositional entry on a docket sheet, more than another statistic in some inexorable, impersonal process that knows no delays for justice. He is an individual clothed with constitutional rights, such as the right to a fair trial and the right to the effective assistance of counsel. That the majority turns a blind eye to this fundamentally flawed and appalling process by upholding Miller’s conviction will surely disappoint those who believe that this Court is the guardian of our constitutional rights. I therefore respectfully dissent.
I.
A.
Terrence Miller was charged with several drug offenses, including two counts of second-degree possession of cocaine with intent *74 to distribute on or near a public park, N.J.S.A. 2C:35-7.1(a). On each of those charges alone, if convicted, he faced a presumptive prison sentence of between five and ten years. N.J.S.A. 2C:43-6(a)(2).
In the latter part of 2007, Miller was represented by an attorney from the Mercer County Public Defender’s Office. Four days before trial, on Thursday, December 6, 2007, without advising Miller or requesting an adjournment, the Public Defender’s Office substituted counsel. Miller’s case was assigned to an attorney who, to that point, had been handling juvenile eases on a per diem basis for the Public Defender’s Office. The attorney had not tried a criminal trial in seven years. He would later explain that as a result of his eleventh-hour appointment he felt he “was being put in a position that [he] shouldn’t be put in.”
At approximately 4:00 p.m. on the day of his new assignment, the attorney visited the trial judge in chambers to express his concern that he would not be prepared for trial. The judge waved away his concern, telling him “don’t worry about it, we’re going to be moving with this case on the 10th.” That evening, the attorney spent one and one-half hours putting together a trial binder and beginning to review discovery. Over the next three days, the attorney devoted just five and one-half hours preparing for trial— without ever discussing the case with his client, any witnesses, the former attorney, or an investigator in the Public Defender’s Office. Because he was rusty trying criminal cases, that Saturday he spent three to four hours reviewing the court rules, rules of evidence, and seareh-and-seizure law.
On Monday, December 10, 2007 at 9:00 a.m., Miller arrived at the courthouse, where he met his new attorney for the first time. In a courthouse stairwell that afforded little privacy, the two engaged in a twenty-five-minute meet-and-greet conversation. As the attorney recalled, awkwardness permeated the conversation between him and his client, for they were complete strangers to each other. The two may have had “some procedural discussions,” and the attorney explained his intention to make an *75 adjournment request. At no time did the attorney and his client talk about any “particulars of trial preparation” before ending their conversation.
The attorney then proceeded to confer with the prosecutor for one half hour about a possible plea agreement. The prosecutor offered Miller, through his attorney, a five-year prison term with a two-year parole disqualifier in exchange for a guilty plea. The attorney — still having never discussed the case or upcoming trial with his client — conveyed the plea offer. This second discussion with Miller, which lasted one half hour, did not “go anywhere.” In all of the fifty-five awkward minutes the attorney spent with Miller before entering the courtroom, the two never discussed the upcoming motion to suppress or trial. They did not converse about a defense, trial strategy, or whether witnesses should be called or subpoenaed. The attorney did not prepare his client for testimony he might give on the stand.
With no joint plan of action, the attorney and Miller appeared in court at approximately 10:30 a.m., as the trial judge commenced proceedings. The attorney knew from his previous conversation with the judge that he was intent on going forward. Carefully choosing words that would not bring the ire of the court down on himself, the attorney stated that his client — not he — preferred an adjournment. The attorney said:
[T]his is the first opportunity I’ve had to meet with [my client]____And while I understand it is the Court’s intention to call this matter and have this matter proceed to trial, in fairness to Mr. Miller, I think he would best prefer that this matter was adjourned to allow an opportunity for us to sit in a more — in a calmer setting so that we can discuss and plan this particular matter. I’ve advised him that this matter was — that the file was provided to me sometime last week, with an opportunity for me to review and prepare. But to that end, I think Mr. Miller would still prefer that this matter not proceed at this time.
[ (Emphasis added).]
In response, the trial judge made clear that he — not the Public Defender’s Office — was the master of his calendar. He expressed pique over that office’s presumption that transferring Miller’s case to a new public defender would dictate whether he — the trial *76 judge — moved a case. The trial judge stressed that he would not brook interference with his prerogatives:
I think as much as three weeks ago the Court, or at least two weeks ago, the Court was aware that [Miller’s former public defender] would not be able to try the case____
The Court was informed that ... the chief of [the public defender’s] office, and ... the assistant chief, were of the opinion that this case couldn’t be tried because it would need new counsel. In fact, the Court was told that----
The public defender’s office never came to the Court or said to the Court that it wanted specifically an adjournment, although the Court learned of it through [Miller’s former public defender] ... who said that the higher ups thought that the matter just couldn’t go ahead.
The Court’s response to [Miller’s former public defender] was, well, you can go back and tell them that it is the judge who decides whether an attorney can be relieved and under what conditions.
This judge has been trying to get a handle on cases for several months and has been unable to move one for trial due to changes in the public defender’s office or the prosecutor’s office with files. So the Court approximately two weeks ago said this matter is going to trial.
[ (Emphasis added).]
Having established who was boss, the trial judge then minimized the seriousness and complexity of Miller’s case. He stated that “trying a drug case for a criminal defense attorney is as easy as trying an intersection accident case for a civil trial lawyer---[T]he scenarios are essentially the same in every case. There is nothing difficult or complex about this case.” The trial judge was dismissive of what is necessary to prepare a criminal drug case for trial, believing that meeting the client and reading a police report were enough. He did not acknowledge that an attorney would need to confer with his client in advance of a motion-to-suppress hearing or prepare him to testify or identify and interview potential witnesses. With those assumptions in mind, the trial judge concluded “that moving the case ahead at this time creates no prejudice to Mr. Miller,” although the judge “coneede[d] ... that Mr. Miller is greeted with some level of discomfort____”
With no further ado, and with no further opportunity for Miller to consult with his attorney, the trial judge stated: “The Court is ready to proceed with the suppression hearing.”
*77 B.
At the motion-to-suppress hearing, the State called one witness, Patrolman William Mulryne of the Trenton Police Department. Mulryne testified that with the use of binoculars he observed Miller engage in what appeared to be separate, hand-to-hand drug transactions with two individuals. One of those individuals, Joseph McKinney, was later arrested after discarding drugs in his possession. Mulryne claimed that Miller then walked away from the area. Mulryne next saw Miller ten minutes later at the same street corner exiting a Cadillac. Miller was arrested, and seized from, him was $790. The police found a bag of 7.29 grams of crack cocaine in the air-conditioner unit of a nearby building, which Miller purportedly had earlier accessed.
Miller testified that a friend had dropped him off near the street corner, he entered a store, and while there was “grabbed” by the police. The police searched his person and found no drugs on him. Miller was detained outside the store for approximately one hour. Then, a police officer approached with a bag in his hand, saying, “[T]his is his.” Miller replied, “It [is] not mine,” but the officer responded, “[I]t is yours now.” The money found on Miller apparently was his earnings from several jobs. Miller basically contended the case was one of mistaken identification and that the officer could not have clearly seen what he claimed to have observed given that trees and foliage would have blocked his view. (It is noteworthy that Miller’s attorney had not visited the scene.)
While on the stand, Miller also complained that he had witnesses to corroborate his account who should have been called at his hearing: “I had other witnesses that would have been testifying here today that witnessed a lot of other things, too, but for some reason we weren’t prepared for the day.” (Emphasis added). Defense counsel did not ask for a continuance to call those witnesses, including McKinney who was prepared to testify that Miller had not sold him drugs. Nor did the trial judge on his own give Miller time to call witnesses on his behalf.
*78 Instead, the hearing ended with just the testimony of Officer Mulryne and Miller. In ruling, the trial judge observed that he was “faced with conflicting stories” of two witnesses and was “limited to the evidence before [him].” (Of course, it was the judge who limited the evidence by denying the adjournment request.) The judge concluded that between the two witnesses, he found “Mulryne’s testimony was credible,” even though Miller’s testimony had “plausibility.” The judge discounted Miller’s testimony based on his prior criminal record. Accordingly, the trial judge denied Miller’s motion to suppress the evidence.
The next day, December 11, the jury was selected, opening statements were given, and the State presented its ease. On December 14, Miller’s attorney placed on the stand three witnesses to support the defense. In particular, McKinney testified that Miller did not sell him drugs and further that Miller was not a drug dealer.
The jury convicted Miller of, among other things, third-degree possession with intent to distribute cocaine. Afterwards, in addressing the court, Miller asserted: “I’m an innocent man. I’m innocent. I’m innocent. It was not me. It was not me. It was my brother.”
II.
In this case we see the convergence of a hopelessly unprepared attorney unwilling to declare in a firm and clear voice that he was not ready for trial and a trial judge frustrated by trial delays and intent on making a point that the Public Defender’s Office could not usurp his calendar. Sacrificed in the crossfire between the trial judge and the “higher ups” at the Public Defender’s Office were Miller’s fundamental rights to the effective assistance of counsel and to a fair trial. An indigent criminal defendant meeting his state-appointed attorney for the first time on the day of trial and having no time to consult with him before a suppression hearing does not fit within any conception of American justice— *79 and certainly cannot be squared with our constitutional jurisprudence.
A.
The right to the assistance of counsel is guaranteed by both the United States and New Jersey Constitutions. U.S. Const, amend. VI (“In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense.”); N.J. Const, art. I, ¶ 10 (“In all criminal prosecutions the accused shall have the right ... to have the assistance of counsel in his defense.”). “[T]he right to counsel encompasses the right to the effective assistance of counsel.” State v. Nash, 212 N.J. 518, 541, 58 A.3d 705 (2013) (emphasis added) (citations and internal quotation marks omitted). The right to the effective assistance of counsel is a necessary corollary to an accused’s right to a fair trial. See Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2A 799, 805 (1963) (“[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.”); State v. Sugar, 84 N.J. 1, 16, 417 A.2d 474 (1980) (citations omitted) (“[T]he assistance of counsel is essential to insuring fairness and due process in criminal prosecutions____”). The right to counsel attaches during all “critical stages” of a criminal prosecution, including a motion-to-suppress hearing. See 3 Wayne R. LaFave et al., Criminal Procedure § 11.2(b) at 620, 622-24 (3d ed.2007).
The mere appointment of counsel, however competent, does not alone satisfy the constitutional guarantee of the right to effective counsel. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377, 379 (1940), cited in Sugar, supra, 84 N.J. at 17, 417 A.2d 474 (“The right to counsel would be an empty assurance if a formal appearance by an attorney were sufficient to satisfy it.”). A criminal defense attorney has an inviolable obligation to consult with his client about the client’s case. That is so because consultation “assures that the client will have the opportunity to assist *80 with his own defense.” Gov’t of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1436 (3d Cir.1996) (“[T]he client’s views and desires concerning the best course to be followed ... must be evaluated and taken into account by counsel.”). “Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant.” Florida v. Nixon, 543 U.S. 175, 178, 125 S.Ct. 551, 555, 160 L.Ed.2d 565, 572 (2004) (citing Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984)). Indeed, “the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution’s requirement that an accused be given the assistance of counsel.” Avery, supra, 308 U.S. at 446, 60 S.Ct. at 322, 84 L.Ed. at 379. When the peculiar circumstances of a case “ma[k]e it so unlikely that any lawyer could provide effective assistance,” then “ineffectiveness [will be] properly presumed without inquiry into actual performance at trial.” United States v. Cronic, 466 U.S. 648, 661, 104 S.Ct. 2039, 2048, 80 L.Ed.2d 657, 669 (1984). This is just such a case.
No attorney can provide effective representation at a motion-to-suppress hearing if he has not spoken with his client beforehand, listened to his account, interviewed his witnesses, or prepared him for his testimony. Miller had witnesses waiting in the wings but his attorney could not call them because he had not spoken with his client. Sitting next to Miller was a total stranger who happened to be his state-appointed attorney. The failure of the attorney to consult with Miller in any meaningful fashion, to prepare him for his testimony, and to present corroborating witnesses at the motion-to-suppress hearing rendered the attorney per se ineffective.
Thus, this ease falls within the narrow band of cases identified in Cronic, supra, in which the “circumstances ... are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.” 466 U.S. at 658, 104 S.Ct. at 2046, 80 L.Ed.2d at 667. An attorney meeting the most minimal *81 standard of constitutional effectiveness would never proceed with a suppression hearing without preparing his client to testify or discussing with him the witnesses who supported his case. The attorney — along with the prosecutor and trial judge — listened to Miller’s account for the first time when he testified from the stand.
The majority contends that it is a “sweeping expansion of existing law” to hold that an attorney who goes to trial without ever consulting or having contact with the client about his case is presumptively ineffective. But the egregious circumstances that led to the denial of effective counsel here are of the same type that the United States Supreme Court envisioned in Cronic. (Supra, 466 U.S. at 660-61, 104 S.Ct. at 2048, 80 L.Ed.2d at 669). In a series of equally egregious cases, the Sixth Circuit found Cronic ineffective-assistance-of-counsel presumptions. See U.S. v. Morris, 470 F.3d 596, 603 (6th Cir.2006) (finding ineffective assistance of counsel where appointed counsel met with client for several minutes in crowded “bull pen” before choosing whether to proceed on state or federal charges); Mitchell v. Mason, 325 F.3d 732, 744 (6th Cir.2003) (finding ineffective assistance of counsel where counsel only met with client for a total of six minutes during seven month period before trial); Hunt v. Mitchell, 261 F.3d 575, 582-85 (6th Cir.2001) (finding ineffective assistance of counsel where court denied defendant opportunity to consult with counsel before voir dire).
That Miller’s rights were violated should be self-evident. Unlike the majority, I do not believe that Miller should have to wait in prison for a post-conviction relief hearing to secure the relief to which he is entitled today — a fair trial. See State v. Allah, 170 N.J. 269, 285, 787 A.2d 887 (2002) (“[D]efendant should not be required to wait until post-conviction relief to raise the issue because the trial record discloses the facts essential to his ineffective assistance claim.”)
The absence of prior client consultation rendered the attorney presumptively ineffective. The harm caused by the deprivation of *82 Miller’s right to the effective assistance of counsel is not readily calculable, but the injustice here is undeniable.
B.
Even putting aside the majority’s crabbed view of constitutionally effective counsel, Miller was denied due process of law. The failure to grant an adjournment was a patent abuse of discretion. If the judge had a point to make with the Public Defender’s Office, it should not have been at the expense of Terrence Miller’s right to a fair trial.
Clearly, a trial judge has broad discretion in running his calendar. That discretion, however, cannot be exercised in an arbitrary manner. Although the grant of an adjournment is within the trial judge’s discretion, “when balancing a short delay in the start of trial against defendant’s legitimate ability to present a viable defense, ... the integrity of the criminal process must prevail over [any] administrative disruption.” State v. Bellamy, 329 N.J.Super. 371, 378, 748 A.2d 106 (App.Div.2000) (citation omitted).
“The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense.” Powell v. Alabama, 287 U.S. 45, 59, 53 S.Ct. 55, 60, 77 L.Ed. 158, 165 (1932). A judge’s “myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality” and violate due process. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849-50, 11 L.Ed.2d 921, 931 (1964).
Miller had a justifiable reason for an adjournment. He had not met his attorney and was proceeding with a critical hearing without having consulted with counsel. The judge was not concerned with Miller’s fair-trial rights. Instead, he railed against the “higher ups” in the Public Defender’s Office who “thought that [Miller’s case] just couldn’t go ahead” because of the transfer of a *83 new attorney to represent Miller. The judge told Miller’s former counsel to send those “higher ups” a message: “[I]t is the judge who decides whether an attorney can be relieved, and under what conditions.” Yet, the trial judge allowed Miller’s former appointed counsel to withdraw from the case and compelled a thoroughly unprepared and newly appointed attorney to represent him.
The trial judge had the obligation of ensuring that Miller received a fair trial. Instead, Miller’s constitutional rights were cast aside so that the trial judge could teach the Public Defender’s Office a lesson and keep his calendar moving.
III.
The proceedings in this case are an affront to our long-established tradition of what constitutes a fair trial. No person, if placed in Miller’s position, would believe that he or she was dealt with fairly by our system of justice. The foreseeable consequence of the majority’s opinion will be to undermine the public’s perception of the integrity of our criminal justice system. As aptly put by Judge Fuentes, the dissenting member of the appellate panel, “[a] system of criminal justice that permits a conviction to stand in a case where an indigent man, through no fault of his own, meets his attorney for the first time on the day the case is scheduled for trial, carries with it the indicia of a ‘show trial’....” Miller, supra, 420 N J.Super. at 104, 18 A.3d 1054.
Miller was denied the right to the effective assistance of counsel and the right to a fair trial, rights guaranteed by both our federal and state constitutions. We will have to wait for another day for the rights sacrificed here to be raised once again to their high place in our constitutional jurisprudence.
For affirmance — Chief Justice RABNER and Justices LaVECCHIA, HOENS and PATTERSON — 4.
For reversal — Justice ALBIN — 1.