RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0114p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DEMETRIC MCGOWAN,

         *Petitioner-Appellee,*

   *v.*

SHERRY BURT,

         *Respondent-Appellant.*

No. 14-2186

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14539—Arthur J. Tarnow, District Judge.

Decided and Filed:  June 8, 2015

BEFORE:  McKEAGUE and DONALD, Circuit Judges; MATTICE, District Judge.[*]

───────────────

## COUNSEL

**ON BRIEF:**  John S. Pallas, Linus Richard Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant.  Samuel Allen Early, III, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

McKEAGUE, Circuit Judge.  This is an appeal from an order of the district court conditionally granting habeas relief to petitioner Demetric McGowan.  McGowan is a prisoner in the custody of the Michigan Department of Corrections, serving a sentence of from 195 to 480

───────────────

[*]Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

months for drug trafficking and firearms offenses, in addition to a 24-month sentence for a felony firearm offense.  The appeal is brought by the State in the name of Sherry Burt, Warden of the Muskegon Correctional Facility, where McGowan is currently incarcerated.  The order granting habeas relief has been stayed pending appeal.  The district court determined that McGowan received ineffective assistance of counsel during plea negotiations, which adversely affected his decision to reject the prosecution's plea offer.  In so ruling, the State contends the district court failed to give required deference to the contrary ruling of the Michigan Court of Appeals.  We agree with the State and, for the reasons that follow, vacate the judgment of the district court.

## I

Trial took place in the Monroe County Circuit Court on December 11, 2006.  McGowan was charged—as a habitual offender, third offense—with (1) possession with intent to deliver 50 or more but less than 450 grams of cocaine; (2) felon in possession of a firearm; (3) possession of a firearm during commission of a felony; and (4) carrying a concealed weapon.  At the start of the day, last-minute plea negotiations ensued.  The prosecution agreed that, if McGowan pled guilty to counts 1 and 3 as a second-offense habitual offender, it would recommend a minimum sentence of five years on the cocaine charge and a two-year mandatory consecutive sentence on the felony firearm charge.  McGowan's counsel, Attorney Craig Tank, advised McGowan that he estimated the sentencing guidelines minimum-sentence range (on the cocaine offense as a second-offense habitual offender) to be 45 to 93 months.[1]  The trial court then advised McGowan that "there's really no telling until we did a presentence investigation report to know for sure what the guidelines would be" . . . and further, that "any sentence that the Court would fashion might be different" than the five-years-plus-two-years sentence discussed.  R.7-5, Trial Tr. at 5–6, Page ID 331–32.  Counsel then elicited confirmation from McGowan on the record that they had discussed the guidelines and the prosecution's offer at length, that counsel had no position on whether to go to trial or not, and that the decision was solely up to McGowan.  Without hesitation, McGowan elected to "proceed forward to trial."  *Id.* at 6, Page ID 332.

---

[1]In a representation that has not been refuted, the State contends the actual minimum-sentence range, if McGowan had accepted the offer and been sentenced as a second-offense habitual offender, would have been 78 to 162 months.  Appellant's Reply Br. at 10.

After a one-day jury trial, McGowan was found guilty on all four charges. Sentence was imposed on January 18, 2007. The parties agreed at sentencing that 78 to 195 months was the minimum-sentence range for the count 1 charge. Attorney Tank acknowledged "this came out a little bit different than I thought," referring to his earlier estimate when McGowan rejected the prosecution's plea offer. R. 7-6, Sent. Tr. at 16, Page ID 679. The court imposed a sentence of 195 to 480 months on the count 1 cocaine charge; sentences of 34 to 120 months on the count 2 and 4 charges, to run concurrently with the count 1 sentence; and a mandatory 24-month sentence on count 3, to be served consecutively.

McGowan moved for a new trial, contending his counsel's erroneous pretrial reading of the sentencing guidelines constituted ineffective assistance of counsel. The trial court conducted an evidentiary hearing and received testimony from McGowan and his former counsel. In rejecting the prosecution's offer, McGowan said he understood that the 45-to-93-month range represented the minimum-sentence range he would be exposed to if he were subsequently convicted of the count 1 offense in trial. R. 7-8, Hrg. Tr. at 7, Page ID 716. Reasoning that the 60-month sentence the prosecution offered to recommend was only 33 months less than his "maximum minimum" exposure if found guilty of count 1 by the jury, McGowan decided to go to trial. Had he known that the actual guidelines range would ultimately be 78 to 195 months, McGowan said he would not have rejected the offer. Rather, he would have pled guilty and foregone the right to assert his trial defense—i.e., that he had no intent to deliver the cocaine he possessed. *Id.* at 14, Page ID 723.

For his part, although he did not remember the specific numerical calculations, McGowan's former counsel conceded that his pretrial estimate had been incorrect. Tank recalled having spent about a half-hour discussing the plea offer with McGowan. He said "a portion of that time was devoted to what my guideline calculations were and a portion of that time was talking about the pros and cons of—of the trial and what I thought that the evidence was that would be significant." *Id.* at 37, Page ID 746. He did not recall specifically why McGowan decided to go to trial, although he remembered that McGowan denied having intent to distribute the cocaine to anyone.

The trial court denied the motion for new trial. The court first explained its impression that McGowan had received fair and effective representation from his attorney. As to the admitted error in counsel's pretrial estimate of the guidelines range, the court emphasized that both the court and counsel explicitly advised McGowan that the estimate was just that—an estimate—and that it might not be accurate; and that ascertainment of the actual range after preparation of the presentence report could "change everything." *Id.* at 51–52, Page ID 760–61. In other words, the court essentially found that Attorney Tank's performance was not "deficient" in a constitutional sense, and that the guidelines error did not prejudice McGowan in making an informed decision whether to accept or reject the prosecution's offer, because McGowan was clearly warned that the estimate was not necessarily reliable. Moreover, the court noted that if McGowan had accepted the offer and the prosecution had recommended a 60-month sentence— well below what turned out to be the low end of the actual guidelines range—the court likely would not have honored the parties' plea agreement and would have given McGowan the opportunity to withdraw his plea anyway.

The Michigan Court of Appeals affirmed. *People v. McGowan*, No. 275781, 2008 WL 723945 (Mich. Ct. App. Mar. 18, 2008). The court held the trial court's findings that counsel's performance was not deficient and that McGowan was not prejudiced by the error were not clearly erroneous. *Id.* at *6–7. The court dismissed as self-serving and uncorroborated McGowan's statement that he would have accepted the prosecution's offer had he known what the actual guidelines range would be. The Michigan Supreme Court denied leave to appeal and this habeas petition followed.

The district court acknowledged the deference due the Michigan courts' rejection of McGowan's ineffective-assistance claim, but its analysis more closely resembles de novo review. In short, the district court determined that defense counsel admitted his error; that McGowan would have pled guilty but for the error; that the trial court would have accepted the plea; and that the sentence imposed pursuant to the plea agreement would have been less severe than the sentence ultimately imposed. R. 28, Opinion and Order at 15–18, Page ID 1341–44. The district court ordered the State to re-offer the plea agreement proposed at the time of trial

within ninety days.  We granted the State's motion to stay the district court's order pending appeal.

## II

Our analysis is guided by two recent Supreme Court opinions, both originating in the Sixth Circuit and both involving claims of ineffective assistance of counsel at the plea bargaining stage:  *Burt v. Titlow*, 134 S. Ct. 10 (2013), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). In *Titlow*, the Court identified the governing standard of review as follows:

> When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).
>
> . . . .
>
> AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). . . . AEDPA likewise imposes a highly deferential standard for reviewing claims of legal error by the state courts: A writ of habeas corpus may issue only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" this Court. § 2254(d)(1).
>
> . . . .
>
> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–787 (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Id*. at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.* (internal quotation marks omitted).

*Titlow*, 134 S. Ct. at 13, 15–16.

In *Lafler*, the Court set forth the standards governing determination of an ineffective assistance of counsel claim:

> "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" 474 U.S. at 57 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).
>
> . . . .
>
> To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.
>
> . . . .
>
> [H]ere the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. 1384–85.

### III

#### A. Performance Prong

The district court held that McGowan's counsel's performance was "clearly deficient" without identifying how the Michigan Court of Appeals' contrary holding was unreasonable. The Michigan Court of Appeals upheld the trial court's determination that McGowan's counsel's pretrial error in estimating the guidelines range did not amount to deficient performance. The trial court reached this conclusion after taking testimony from both McGowan and Tank, and after having conducted the pretrial proceeding when McGowan rejected the prosecution's offer. The trial court explained that McGowan was "adequately advised"—notwithstanding his

counsel's mistaken estimate—given that both the court and counsel specifically warned McGowan that the actual minimum-sentence guidelines range could very well be "different" and even "substantially higher." R. 7-8, Hrg. Tr. at 51–52, Page ID 760–61. The trial judge, who had the superior opportunity to assess demeanor and credibility, determined that "[i]t was clear [McGowan] had no interest in doing that [i.e., accepting the prosecution's plea offer], and that was his right." *Id.*

Whether viewed as a determination of fact entitled to deference under 28 U.S.C. § 2254(d)(2), or as a mixed determination of fact and law reviewable under § 2254(d)(1), McGowan has failed to show that the state court's assessment of the adequacy of his representation was an unreasonable application of *Strickland*. In *Strickland*, the Court described the deference we are to use in assessing counsel's performance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Strickland*, 466 U.S. at 689 (citation omitted). Further, as *Titlow* reminds us, "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Titlow*, 134 S. Ct. at 18.

Although the negotiation of a plea bargain is a critical stage in the prosecution to which the right to effective assistance of counsel attaches, the duties and responsibilities of defense counsel in the plea bargain process have not been specifically defined. *Missouri v. Frye*, 132 S. Ct. 1399, 1407–08 (2012). This is because the art of negotiation is nuanced, involves matters of personal style, and presents questions farther removed from judicial supervision. *Id.* at 1408.

Moreover, because the *Strickland* standard, especially as applied in the plea-bargain context, is a general one, the range of reasonable applications permissible under § 2254(d) is substantial. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Thus, when a federal court reviews an ineffective-assistance claim under § 2254(d), the question is not simply whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Applying these standards, the error in the district court's analysis becomes clear. The district court focused on the inaccuracy of McGowan's counsel's guidelines estimate, rather than the adequacy of the state court's assessment of McGowan's claim. In our view, the state court clearly identified a reasonable basis for concluding that McGowan's counsel's performance, albeit imperfect, fell within *Harrington*'s wide range of permissible assistance. The state court's determination cannot be deemed unreasonable merely because a reviewing court might have reached a different conclusion in the first instance. *Titlow*, 134 S.Ct. at 15. The Michigan Court of Appeals recognized that counsel's original guidelines range estimate was inaccurate, but observed that both counsel and the trial court warned McGowan the estimate could be erroneous and that it was impossible to say what the actual range would be until after the presentence report was finalized. Indeed, McGowan said he understood these warnings and wanted to proceed to trial despite counsel's advice that he "should strongly consider" the prosecution's offer.

Yet, though McGowan *said* he understood when he rejected the prosecution's offer before trial began, he claimed not to have understood in the post-judgment evidentiary hearing eight months later. The trial court rejected McGowan's contention that his purported misunderstanding was attributable to ambiguity in the instruction he received from counsel and the court. That is, the trial court rejected McGowan's assertion that he was led to believe the estimated 45-to-93-month range would apply even if the jury found him guilty on all counts, not just if he accepted the prosecution's offer. Indeed, McGowan's supposed misunderstanding is directly contrary to what his counsel told him on the record. Referring to the 45-to-93-month range, Tank said "those are the sentencing guidelines that are contingent upon the plea[.]" R. 7-5, Trial Tr. at 7, Page ID 333. Continuing, he added, "if you are convicted, depending upon what you are convicted of, they could be substantially higher or they could be less; you understand

that?" McGowan responded, "Yes." The trial court thus reasonably dismissed McGowan's contention that Tank's advice to him was constitutionally deficient, noting that it was clear McGowan had no interest in pleading guilty. R. 7-8, Hrg. Tr. at 52, Page ID 761.

The Michigan Court of Appeals' affirmance of that holding is duly explained and has not been shown to be based on an unreasonable determination of facts or on an unreasonable application of clearly established federal law. Inasmuch as the specific contours of counsel's duties during the plea bargaining process have yet to be clearly established by decisions of the Supreme Court, *Frye*, 132 S. Ct. at 1407–08, we cannot say that the state court's ruling is not within the broad range of permissible reasonable applications. The district court's contrary conclusion fails to accord the deference required by AEDPA.[2]

## B. Prejudice Prong

McGowan has also failed to show *Strickland* prejudice. Citing *Lafler*, 132 S. Ct. at 1391, the district court concluded that prejudice is made out by the simple fact that McGowan received a more severe sentence as a result of the jury's verdict than he would have received had he pled guilty. The district court held that the Michigan Court of Appeals unreasonably dismissed as "self-serving" McGowan's testimony that he would have accepted the prosecution's offer had he fully understood the consequences. Again, the district court's reasoning is faulty.

As an initial matter, *Lafler* is, on this point, clearly distinguishable. In *Lafler*, the parties agreed both that defense counsel's conduct was constitutionally deficient and that the defendant went to trial rather than accept a plea deal *as a result of* counsel's ineffective assistance. *Lafler*,

---

[2]The district court cited *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), for the proposition that an erroneous guidelines estimate during plea negotiations may constitute ineffective assistance of counsel. R. 28, Opinion and Order at 16, Page ID 1342. The court's reliance on *Morris* is unpersuasive for several reasons. First, *Morris* is factually distinguishable in that the inadequacy of defense counsel's representation was much more glaring. Morris's attorney had just been appointed to represent him; had no knowledge of the strength of the prosecution's case, had no prior experience in federal court and was unfamiliar with the federal sentencing guidelines (which played a role in the state court plea negotiations); and was given only very limited opportunity to discuss the prosecution's plea offer when communicating what turned out to be an inaccurate estimate of relevant sentencing range. Further, Morris relied on the erroneous estimate in rejecting the plea offer. In *Morris*, we upheld dismissal of the ensuing federal indictment based on the denial of effective representation in the state court proceedings, but *Morris* has little precedential value here for several reasons: it is not a habeas case; it did not involve interference with a state court judgment; it did not implicate AEDPA deference; and it does not constitute "clearly established Federal law" for purposes of our review under AEDPA. *See Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'")

132 S. Ct. at 1384, 1386.   Here, in contrast, McGowan's counsel's error did not amount to constitutionally deficient assistance and the record shows that his decision to go to trial was not so much motivated by counsel's error as by McGowan's hope that the jury would believe his testimony and find him not guilty.   Absent a showing of deficient performance as well as a causal connection between the deficiency and the defendant's decision to reject a plea offer, *Lafler*'s recognition that the resulting longer sentence amounted to *Strickland* prejudice is of little significance.

Further, it can hardly be denied that McGowan's testimony at the evidentiary hearing was self-serving.   That does not mean it merits no consideration—and clearly, the Michigan Court of Appeals did consider it.   Rather, consonant with *Strickland*'s cautionary note about a defendant's natural tendency to second-guess his attorney's assistance after an adverse judgment, the state court scrutinized McGowan's asserted misunderstanding in light of what was said at the time he rejected the plea offer without "the distorting effects of hindsight."   *See Strickland*, 466 U.S. at 689.   The state court's determination that McGowan was not prejudiced by the inaccuracy of counsel's guidelines estimate is not unreasonable—certainly not unreasonable in a way that reflects such an "extreme malfunction" as to warrant federal habeas relief.   *See Titlow*, 134 S. Ct. at 16.   Indeed, our own close scrutiny of McGowan's claim discloses four telling findings.

First, McGowan's asserted misunderstanding, as the state court noted, is not corroborated.   Attorney Tank was asked whether he knew what motivated McGowan's decision to go to trial—whether reliance on the erroneous guidelines estimate, or insistence on defending against the charge because he lacked intent to distribute the cocaine.   Tank could not remember whether McGowan told him what drove the decision, but he recalled McGowan telling him he had no intent to deliver the cocaine to anyone.   Thus, although counsel did not hesitate to acknowledge his guidelines error, his post-judgment testimony tends to support, if anything, the trial court's finding that the error did *not* play a causal role in McGowan's decision to reject the plea offer.

Second, McGowan's asserted misunderstanding is contradicted by his own statement on the record in the trial judge's presence when he rejected the plea offer.   McGowan affirmatively said he understood his options after his attorney spoke with him "at length about the proposed

offer and the sentencing guidelines." R. 7-5, Trial Tr. at 5–7, Page ID 331–33. He said, in effect, that he understood that the 45-to-93-month guidelines range estimate was not necessarily reliable. *Id.* In choosing to go to trial, he showed no equivocation or uncertainty.

Third, McGowan's claim of misunderstanding and of its role in his decision was not credited by the trial judge, who had a full opportunity to assess McGowan's credibility before trial, during trial, and in the post-judgment evidentiary hearing. McGowan has failed to show that the trial court's finding is clearly erroneous and has failed to show that the Michigan Court of Appeals' affirmance represents an unreasonable application of *Strickland*.

Fourth, even if McGowan had shown that he would have accepted the offer had he fully understood his options and possible consequences, he has failed to make the required showing, per *Lafler*, that the trial court would have been willing to sentence him in accordance with the terms of the plea agreement. *See Lafler*, 132 S. Ct. at 1385. The district court characterized comments by the trial judge as implying that he would have accepted the plea agreement and imposed sentence in accordance with it. R. 28, Opinion and Order at 18, Page ID 1344. But this characterization is directly refuted by the record of what the trial judge actually said. If McGowan had accepted the offer, the trial court would have been invited to sentence him to a prison term of 60 months on the count 1 charge, 18 months below the low end of what would have been minimum-sentence range. *See* n. 1, above. The trial judge stated essentially that he could not recall ever having imposed such a below-guidelines sentence and that if he could not abide by the terms of the parties' agreement in sentencing, he would have allowed McGowan to withdraw his plea. R. 7-8, Hrg. Tr. at 53, Page ID 762. Further, the fact that the minimum sentence ultimately imposed is at the high end of the actual minimum-sentence range strongly suggests the trial court would not have been willing to sentence McGowan in accordance with the parties' agreement. We don't know what would have happened if McGowan had accepted the offer, but what we do know clearly supports the state court holding that McGowan did not carry his burden of showing *Strickland* prejudice.

Accordingly, McGowan has failed to show the Michigan Court of Appeals' assessment of *Strickland* prejudice is unreasonable.

**IV**

As indicated above, our analysis is guided primarily by two recent Supreme Court rulings, both of which originated in the Sixth Circuit and presented claims of ineffective assistance at the plea bargaining stage: *Burt v. Titlow* and *Lafler v. Cooper*. In *Lafler*, the Court upheld our award of habeas relief where the parties agreed that defense counsel's performance was deficient and the state court's determination that the deficiency did not result in prejudice was deemed contrary to clearly established federal law. In *Titlow*, the Court reversed our award of habeas relief, holding that the state court's determination that defense counsel's performance was not deficient in a constitutional sense was not unreasonable. Each case presented its own unique set of facts and each resulted in a different outcome. But both rulings involved application of the same substantive law and focused scrutiny on the reasonableness of the state court's adjudication of the ineffective-assistance claim.

While there may be various explanations for the different outcomes in the two cases, a most conspicuous possible explanation is found in comparison of the state court decisions that were the focus of the Supreme Court's review under AEDPA. In *Lafler*, the Court found that the state court adjudication had not even applied the *Strickland* standard to the ineffective-assistance claim and was therefore contrary to clearly established federal law. 132 S. Ct. at 1390. In *Titlow*, on the other hand, the Court concluded that "the Sixth Circuit improperly set aside a 'reasonable state court determination of fact in favor of its own debatable interpretation of the record.'" *Titlow*, 134 S. Ct. at 17 (citation omitted). Because the state court decision was reasonable and supported by the record, it could not be disturbed under the deferential review mandated by AEDPA. *Id.* at 18.

The instant case is more like *Titlow* than *Lafler*. Here, the Michigan Court of Appeals' ruling, unlike the state court adjudication at issue in *Lafler*, addressed McGowan's ineffective-assistance claim directly and reasonably evaluated it under the *Strickland* standard. *McGowan*, 2008 WL 723945 at *6–7. It follows that the district court, consistent with *Titlow*, was obliged

to deny habeas relief on this ineffective-assistance claim despite its disagreement with the state court's interpretation of the record.**[3]**

Accordingly, the judgment of the district court granting conditional habeas relief is **REVERSED** and the case is **REMANDED** for further proceedings on McGowan's pretermitted claims.

---

**[3]**Although the district court cited *Lafler*, its opinion is devoid of reference to *Titlow*.