**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0649n.06

No. 16-1124

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 05, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT BRANNON, | ) | |
| | ) | |
| **Petitioner-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| LLOYD RAPELJE, | ) | |
| | ) | **OPINION** |
| **Respondent-Appellant.** | ) | |
| | ) | |

Before: COLE, Chief Judge; DAUGHTREY and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** After a four-day trial in the Monroe County Circuit Court, Robert K. Brannon was convicted of first-degree criminal sexual conduct for acts committed against his six-year-old niece. Brannon subsequently moved for a new trial, asserting a claim of ineffective assistance of counsel. After an evidentiary hearing, the state trial court granted Brannon's motion for a new trial, and the Michigan Court of Appeals affirmed. The Michigan Supreme Court reversed and remanded with instructions to reinstate the conviction. Brannon then filed a petition for habeas relief in the U.S. District Court for the Eastern District of Michigan, arguing that counsel was ineffective for failing adequately to investigate and present expert testimony regarding the reliability of the victim's testimony. The district court conditionally granted a writ of habeas corpus based on ineffective assistance of counsel in failing to investigate and present expert testimony. We **REVERSE** the district court's

judgment regarding Brannon's ineffective-assistance-of-counsel claim, and **REMAND** for consideration of his remaining claims.

## I. BACKGROUND

The charges against Brannon arise out of events that occurred as early as 1995. The prosecution's case rested primarily on testimony from Brannon's niece, who stated that when she was six years old, while staying at her grandparents' house in Michigan, Brannon anally penetrated her with a crayon. R. 6-17 (9/29/2008 Trial Tr. at 251–56) (Page ID #1062–67). Brannon's niece did not tell anyone about this incident until about ten or eleven years later, after she learned that her aunt was sexually assaulted by Brannon. *Id.* at 256–58, 306 (Page ID #1067–69, 1117). The prosecution also offered testimony from the niece's mother, grandfather, and aunt, as well as the detective from the Kane County Child Advocacy Center who interviewed the niece several years later.

The defense's strategy focused on undermining the niece's credibility as a witness. Brannon's counsel, Attorney Michael Schloff, offered testimony from alibi witnesses to demonstrate that Brannon did not visit the grandparents' house when the alleged conduct took place. Brannon's wife testified that they had traveled during the summer in question, but not to her parents' home in Michigan, and obtained bank records to corroborate her testimony. R. 6-19 (10/01/2008 Trial Tr. at 58–68, 90–97) (Page ID #1487–97, 1519–26). Brannon's former boss testified to business activity and expense reports that further supported the testimony of Brannon's wife. *Id.* at 171–73, 182 (Page ID #1600–02, 1611). Schloff also offered testimony

from individuals who were friendly or close with Brannon's niece when they were children, and who had never heard of any inappropriate activity between Brannon and his niece. *Id.* at 192–96 (Page ID #1621–25).

After a four-day trial, Brannon was convicted of first-degree criminal sexual assault. Brannon filed a motion for a new trial, asserting claims of ineffective assistance of counsel, prosecutorial misconduct, great weight of the evidence, and erroneous admission of evidence. The trial court denied all but the first claim, for which it granted an evidentiary hearing.

The inquiry at the evidentiary hearing primarily concerned Schloff's decision not to call certain expert witnesses. One witness was Dr. Terence Campbell, one of the three expert witnesses with whom Schloff spoke prior to trial. R. 6-28 (*Ginther* Hr'g Tr. at 13–14) (Page ID #2011–12). Campbell told Schloff that he could provide "some favorable testimony" by explaining problems with delayed memory and phenomena whereby false memories are created in children by the suggestion and repetition of facts. *Id.* at 13, 18–20 (Page ID #2011, 2016–18). He also warned Schloff, however, that his testimony would likely "have both good and bad components." *Id.* at 19–20 (Page ID #2017–18). In particular, Campbell anticipated that he would have to admit that delayed reporting of sexual abuse was common. *Id.* at 17–20, 25 (Page ID #2015–18, 2023).

Schloff was also asked about his decision not to interview or call as a witness Dr. Katherine Okla, who was listed as a potential witness for the prosecution. Schloff admitted that he did not contact Okla because he believed attorney-client privilege precluded him from doing

so, and in any case, he did not believe that Okla would speak to opposing counsel. *Id.* at 26–27 (Page ID #2024–25). He did, however, obtain a trial transcript from another trial at which Okla had testified, contacted an attorney from that case, and discussed Okla's past publications with Campbell, who was familiar with her work. *Id.* at 14, 25–26 (Page ID #2012, 2023–24). Schloff did not contact Okla even when, two weeks before trial, the prosecution informed him of their decision not to call Okla as a witness. *Id.* at 23–24 (Page ID #2021–22).

Instead, Schloff decided at that time not to call any witnesses, because he feared that either his expert or an expert called by the prosecution in rebuttal would offer an opinion that delays in reporting of sexual abuse are common. *Id.* at 24–26 (Page ID #2022–24). He stated that, "I felt that the jury, when it initially heard that there was a ten-year delay, was gonna be very bothered by that and was gonna be quite suspicious of that delay and was going to want to hear why that delay occurred or perhaps how it could be explained. And I fully expected that Katherine Okla would provide that answer." *Id.* at 24 (Page ID #2022).

The state trial court found that defense counsel had been ineffective and granted Brannon's motion for a new trial. R. 1-2 (Trial Ct. Order at 19) (Page ID #109). The Michigan Court of Appeals affirmed, holding that counsel had failed adequately to investigate the benefit of expert witnesses. *People v. Brannon*, No. 292617, 2010 WL 1052272, at *3 (Mich. Ct. App. Mar. 23, 2010). The Michigan Supreme Court then reversed in a one-paragraph order and remanded for reinstatement of the conviction. *People v. Brannon*, 486 Mich. 1070 (2010). On remand, the trial court imposed a 20-to-40 year sentence on Brannon. His conviction was

4

affirmed by the appellate court, *People v. Brannon*, No. 303267, 2013 WL 4528453, at \*1 (Mich. Ct. App. Aug. 27, 2013), and the Michigan Supreme Court denied Brannon relief in a standard order, *People v. Brannon*, 495 Mich. 935 (2014). Brannon did not appeal to the U.S. Supreme Court or seek collateral review before the state trial court.

Brannon then filed the instant petition for habeas corpus relief in the Eastern District of Michigan, raising eleven claims. Without addressing the remaining claims, the district court granted Brannon relief based on his claim that counsel was ineffective for failing adequately to investigate and present expert testimony. R. 8 (Dist. Ct. Order at 1–2) (Page ID #3172–73). This appeal by the state followed.

## II. ANALYSIS

In order to succeed on an ineffective-counsel claim, a petitioner must demonstrate both deficiency and prejudice. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Where, as here, a petitioner's claim was previously adjudicated on the merits in state court, federal habeas review is further limited by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under § 2254, we may not grant federal habeas relief "with respect to [a] claim that was adjudicated on the merits in [s]tate

court proceedings unless" the state court's decision "was contrary to" clearly established federal law, "involved an unreasonable application of" such law, or reached a conclusion "based on an unreasonable determination of the facts in light of the evidence" before the state court. 28 U.S.C. § 2254(d). The Supreme Court has made clear that federal courts are bound by the statute's terms, and we may not grant the writ where "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted).

In reviewing Brannon's claim, therefore, we cannot simply ask whether counsel's performance fell below the acceptable standard outlined in *Strickland*. *Id.* Nor can we reverse a state court's determination merely because we would have found a *Strickland* violation on direct review. *See id.* (reversing a grant of relief where "it is not apparent how the [court's] analysis would have been any different without AEDPA"); *McGowan v. Burt*, 788 F.3d 510, 513 (6th Cir. 2015) (reversing a district court's grant of relief because "its analysis more closely resembles de novo review"). The key inquiry is not merely whether the state court's application was incorrect. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. Even where a federal court would reach a contrary conclusion on direct review, it "must determine what arguments or theories supported or . . . could have supported, the state court's decision," and reverse only in those extreme cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* at 102.

Here, the district court's holding did not properly take into account the limits of § 2254(d). After finding Schloff's performance "unreasonable and prejudicial" based upon its own evaluation under *Strickland*, the district court concluded that the state court's decision to the contrary was "objectively unreasonable." R. 8 (Dist. Ct. Order at 17) (Page ID #3188). Although it found that Schloff's trial decisions were unreasonable, the district court did not explain why "fairminded jurists could not disagree that the conclusion reached by the Michigan Supreme Court was erroneous," *id.*, and made no effort to identify "what arguments or theories supported . . . the state court's decision." *Harrington*, 562 U.S. at 102. Under the deferential terms imposed by AEDPA, we must reverse the grant of habeas relief.

Although there may be compelling reasons to view Schloff's performance as deficient, the Michigan Supreme Court's determination that he "made a reasonable strategic decision to forego expert testimony in light of the possibility that the witness might also provide testimony favorable to the prosecution" was not objectively unreasonable. *Brannon*, 486 Mich. at 1070. Schloff contacted three potential experts and discussed the delayed-reporting phenomenon at length with Campbell. He learned that while Campbell could render favorable opinions regarding the effect of delay and repetition of facts on a child's memory, he might also represent that delayed reporting is common in sexual assault cases, which could have adversely affected Brannon's case.

The state court's determination that foregoing expert testimony constituted a "reasonable strategic decision" is supported by federal law. The Supreme Court has recognized that counsel

may sometimes forego key arguments when raising them could "increase[] the likelihood of the prosecution[] producing its own evidence . . . or transform the case into a battle of the experts." *Harrington*, 562 U.S. at 108–09. Indeed, because criminal cases impose such a high burden of proof on the prosecution, "it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Id.* at 109. Here, Schloff could have reasonably believed that producing his own expert would prompt the prosecution to present unfavorable evidence that would further damage Brannon's case. Moreover, foregoing this evidence may have been a reasonable strategic decision given Schloff's belief that the jury would be suspicious of the delay in reporting, which, coupled with the alibi defense, could cast a sufficient amount of doubt on the prosecution's case. *See* R. 6-28 (*Ginther* Hearing Tr. at 24) (Page ID #2022).

Considering the "arguments or theories [that] . . . could have supported[] the state court's decision," *Harrington*, 562 U.S. at 102, it is possible that fairminded jurists could disagree as to whether trial counsel's actions and omissions were justified as reasonable strategic decisions. Although there is evidence that Schloff's performance reflects flawed interpretations of the law, that alone is insufficient to overturn a state court's decision under AEDPA. Because the state court did not unreasonably apply the *Strickland* standard, Brannon is not entitled to federal habeas relief on his claim for ineffective assistance of counsel in failing to investigate and present expert testimony. We therefore reverse the judgment of the district court and remand for consideration of Brannon's remaining ten claims.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment regarding Brannon's ineffective-assistance-of-counsel claim, and **REMAND** for consideration of his remaining claims.